STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES LONG, A/K/A SONNY LONG, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 17, 1961—Decided April 21, 1961.

Before Judges GOLDMANN, FOLEY and LEWIS.

*Mr. C. Robert Sarcone* argued the cause for appellant (*Messrs. Sarcone & Mascia,* attorneys; *Mr. Victor A. De-Filippo,* on the brief).

*Mr. C. William Caruso,* Special Legal Assistant Prosecutor, argued the cause for respondent (*Mr. Brendan T. Byrne,* Essex County Prosecutor, attorney; *Mr. Caruso,* on the brief).

PER CURIAM. Defendant appeals from convictions on two indictments charging him with willfully and unlawfully making and taking book on the running of horses, and maintaining premises to which persons might resort for the purpose of betting on horse races, both being in violation of *N. J. S.* 2A:112–3. He contends that (1) the trial court erred in denying his motion for acquittal at the close of the State's case; (2) the jury verdict was against the weight of the evidence; and (3) the instructions given the jury were prejudicial and constituted reversible error.

On a motion for acquittal at the close of the State's case, the court must determine the sufficiency of the case solely on the basis of the proofs as they exist at that time. *State v. Trypuc*, 53 *N. J. Super.* 6, 11 (*App. Div.* 1958). The test on such a motion is whether there is any legal evidence before the jury from which an inference of guilt can legitimately be drawn. *State v. Picciotti*, 12 *N. J.* 205, 208–209 (1953); *State v. Buffa*, 51 *N. J. Super.* 218, 234 (*App. Div.* 1958), affirmed 31 *N. J.* 378 (1960), *certiorari* denied 364 *U. S.* 916, 81 *S. Ct.* 279, 5 *L. Ed.* 2d 228 (1960). The evidence must be viewed in its entirety and the State given the benefit of all legitimate inferences to be drawn therefrom.

Defendant maintains that the State failed to establish a *prima facie* case of bookmaking, and that this infected the conviction for maintaining premises where persons might resort to bet on horse races. We have carefully examined the record in the light of this argument and find it without merit. The detectives who made the raid found in defendant's second floor bedroom a telephone which defendant had without authority connected to one which the telephone company had installed in the living room; an "Armstrong sheet" of current date listing the names of horses entered at the major tracks, their post positions, probable odds, jockeys, etc.; an "account slip," which was described by an expert as containing some 40 or 50 names or initials of persons who had called the bookmaker, and indicating

their winnings. While the detectives were in the apartment the phones rang several times. When they answered the callers asked for "Sonny" (defendant's nickname), and the detectives, pretending they were "Sonny," took a number of bets. Outside the open bedroom window was a ledge protected by a parapet. The detective who remained out in the street in front of the building had seen a baldheaded man come out of the open window, walk along the ledge in a crouched position while holding a paper in his hand, and disappear from view. He identified defendant as that man. (Incidentally, this fact well distinguishes the case from *State v. O'Donnell*, 8 *N. J. Super.* 13 (*App. Div.* 1950), relied on by defendant, where the court held the mere fact that an individual was a tenant in an apartment and the phone was listed in his name did not show *scienter*.)

 The evidence was sufficient to sustain the inference that defendant was making book in his apartment prior to the arrival of the raiding squad. Defendant urges that the account sheet did not establish that wagers were accepted and recorded, citing *State v. Morano*, 134 *N. J. L.* 295, 299 (*E. & A.* 1946), and similar cases. But the detective who led the raid, concededly an expert in these matters, testified on cross-examination that from his experience the account sheet was a "personal memorandum of an account stating bets and these are the records of a player's wins or losses." Surely it was legitimate to infer from the recording of wins or losses on horse race bets that the bets themselves were likewise taken and recorded. Moreover, the account sheet cannot be considered in isolation, but must be viewed in the totality of all the circumstantial evidence. Circumstantial evidence is not only sufficient but, as was said in *State v. Dancyger*, 29 *N. J.* 76, 84 (1959), may also be more certain, satisfying and persuasive than direct evidence.

The jury could therefore legitimately infer that shortly before the raid someone was taking and recording bets in defendant's apartment. They could likewise infer that defendant was that person, both from the positive identifica-

tion of him as the individual who climbed out of the apartment window and the fact that those who phoned to place bets asked for "Sonny." Further, there is the fact that the bookmaking was taking place in defendant's own apartment. Since the jury could legitimately infer that defendant had been making book, they could likewise infer that he knowingly maintained premises to which persons might resort for the purpose of betting on horse races.

Accordingly, in the light of the cases first cited, the trial court did not err in denying defendant's motion for acquittal at the close of the State's case.

█ The proofs at the conclusion of the entire case were equally strong against defendant. The language of our Supreme Court in *State v. Rogers,* 19 *N. J.* 218, 235 (1955), is apposite in assessing the quality of the proofs in this case:

"* * * the chain of facts and circumstances presented, taken in their natural sequence, excluding all except the logical and convincing inferences dictated by caution and sound sense, yields a vivid, abiding conviction of guilt, crowding out any reasonable doubt by its firmness and finality."

█ Under *R. R.* 1:5–1(a) we may not set aside the verdict of a jury as against the weight of the evidence unless "it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion." The jury has the responsibility for determining whether the guilt of a defendant has been proven beyond a reasonable doubt. Our review is aimed only at correcting injustice resulting from an obvious failure by the jury to perform its function. Unless there is a clear and convincing indication that its verdict was the result of mistake, partiality, prejudice or passion, we will not disturb its determination. *State v. Haines,* 18 *N. J.* 550, 565-566 (1955).

█ There remains defendant's final complaint directed to the following portions of the trial court's charge:

"The recording of bets need not be on any formal book or registry. It may be recorded on any piece of paper used for the purpose, such as the paper in evidence, if you find that said paper does represent

the taking of bets and not a recording of bets made by him with others on horse races.

\* \* \* \* \* \* \* \* \*

\* \* \* There has been some evidence of the finding of a record which contained bets as testified to by Detective Kenny and there has been evidence of a telephone extension, a telephone in the bedroom. \* \* \*"

The argument is that the above excerpts led the jury to believe that the account sheet found in the bedroom was a paper "containing bets," whereas there was no direct evidence that defendant had recorded bets. The actual recording could only be inferred from the circumstantial evidence.

In the first portion of the charge the court, in effect, was telling the jury that bets might be recorded on any piece of paper, such as that in evidence, but the jury must find that the paper represented the recording of bets *taken,* as opposed to bets *made.* Later in the charge the court apparently confused its illustration and intimated that the account sheet may have contained recorded bets.

However, the trial judge did charge that the jury was the sole judge of the facts and any statement made by him as to any facts which did not coincide with their recollection were to be disregarded. This neutralized any prejudicial effect which the court's quoted instruction might have created.

█ But more important than this is the fact that the attorney who so ably conducted the defense made no objection whatsoever to the charge. Hence, defendant must show plain error. *R. R.* 1:5-1(a). For a charge to constitute plain error it must so grievously affect defendant's substantial rights as to convince us that it possessed a clear capacity to bring about an unjust result. *State v. Hipplewith,* 33 *N. J.* 300, 309 (1960). Our examination of the entire charge convinces us that defendant's substantial rights were in no way affected. There is no reason for calling into play the plain error rule. *State v. Abbott,* 64 *N. J. Super.* 191, 202 (*App. Div.* 1960).

Affirmed.