84 N.J. Super. 508 (1964)
202 A.2d 856
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM CHARLES GRIFFIN, ALIAS WILLIAM C. MURPHY, ALIAS RALPH J. WILSON, DEFENDANT-APPELLANT, AND ALEXANDER MURPHY, ALIAS ALEX POGOZELOWSKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 25, 1964.
Decided July 15, 1964.
*511 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Robert F. Konopka, assigned counsel, argued the cause for appellant William Charles Griffin.
Mr. Gene G. King, assigned counsel, argued the cause for appellant Alexander Murphy.
Mr. Raymond R. Trombadore, Assistant County Prosecutor, argued the cause for the State (Mr. Arthur S. Meredith, County Prosecutor, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendants William Charles Griffin (alias William C. Murphy or Ralph J. Wilson), Alexander Murphy (alias Alex Pogozelowski), and Richard Patrick Cavanaugh (alias Richard Patrick Meechan) were indicted by the Somerset County grand jury for three criminal offenses. Indictment 97-61-M charged that on March 13, 1962 defendants committed the crime of larceny, in violation of N.J.S. 2A:119-2, by stealing seven pairs of men's slacks valued at $84.86 from Carlton, Inc. in Bridgewater Township. Indictment 98-61-M charged that on the same date defendants committed the crime of larceny by stealing four men's suits valued at $299.50 from the Olympic Shop in Bernardsville. Indictment 99-61-M charged that on the same date defendants committed the crime of receiving stolen goods, in violation of *512 N.J.S. 2A:139-1, by feloniously receiving eight men's suits valued at $748.50 owned by Salny Bros. and M. Epstein, Inc., which corporations were located in Morristown, New Jersey.
Following the return of the indictments, defendants moved to suppress evidence seized by the police consisting of articles of clothing and two briefcases, on the ground that such evidence was the product of an unlawful search and seizure in violation of their rights under the Fourth Amendment. The motions were denied. Thereafter indictment 99-61-M charging receiving stolen goods was dismissed on motion by the State because an indictment for larceny of said goods had been returned in Morris County.
The two larceny indictments were consolidated for the purpose of trial and at the outset of the trial defendants again moved to suppress the evidence. The motion was denied. In the trial that followed, defendants were found guilty by a jury in the Somerset County Court.
Defendants Griffin and Murphy appeal, contending that the court erred in denying the motions made prior to trial, and renewed at the outset of the trial, to suppress as evidence the stolen articles found in their possession. Murphy also contends that the court erred in the denial of a motion for dismissal on the ground that there was no proof of larceny, and further that there was error in the court's charge to the jury.
The following evidence was adduced on the motions to suppress. At 6:20 P.M. on March 13, 1962, State Trooper Earl Clouse observed a 1959 Chevrolet two-door sedan leave the parking lot of the Somerset Shopping Center in Bridgewater Township and turn left onto Route 202-206. An unofficial "No Left Turn" sign is located at the exit from the parking lot. Although a left turn onto the highway at the exit is not a violation of law, it is hazardous, and Trooper Clouse stopped the vehicle as a courtesy to advise the driver that such a turn was not safe.
Griffin was the operator of the Chevrolet. Cavanaugh sat in the front passenger seat and Murphy occupied the rear right seat.
*513 Griffin and Trooper Clouse left their respective vehicles and walked to the right side of the Chevrolet, where the officer asked Griffin for his driver's license and the automobile registration, which Clouse testified was a customary request. Griffin had no license, but the two men remaining in the car produced the car registration certificate from the glove compartment. It indicated that the motor vehicle was owned by one Josephine Abate of Bayonne.
By this time Cavanaugh had alighted from the car and stood next to Griffin. Clouse asked for evidence of their identification, but none of the three men could produce any. While asking Murphy, who was seated on the rear seat of the car, for his identification, the trooper shined his flashlight into the rear part of the car in Murphy's direction. He then observed clothing piled on the left rear seat next to Murphy and on the floor behind the driver's seat. He noticed that several men's suits, apparently new and still on hangers, were "semi-folded," partly on the seat and on the floor. He was able to see that the suits still bore labels and price tags stitched to the sleeves. He also saw two briefcases.
Following his observation of the clothing in the car and defendants' failure to produce any identification other than the motor vehicle registration, Trooper Clouse directed defendants to follow him in the car to the State Police Barracks at Somerville. They did so.
At the police station, having been informed by Griffin that he had been issued a Massachusetts driver's license which Griffin said had expired, Clouse initiated a "look up" proceeding to check this information with the Massachusetts police authorities. He also arranged for a "look up" and a "lost and stolen look up" with the New Jersey authorities to ascertain whether the motor vehicle had been stolen.
Griffin told the officer that Murphy had borrowed the vehicle from a person known as Dominick and asked, and was granted, the right to make a telephone call. The person to whom the call was made, purportedly Josephine Abate, told *514 Trooper Clouse that she was the owner of the motor vehicle and that it had not been stolen.
Trooper Clouse also went out to defendants' motor vehicle, which was parked next to the police station, to make a further observation of the car. He again flashed his searchlight into the rear portion of the car where the clothing was piled. He was able to observe that the hanger of the suit on top bore the name of "Olympic Shop."
Investigator Thomas Walker of the State Police arrived at the police station at about 6:50 P.M. and took over the investigation. Trooper Clouse reported how he had stopped defendants' motor vehicle and that no one possessed a driver's license or any identification. Clouse further reported that he had observed what appeared to be new clothing, with price tags still clipped to the sleeves, piled on the floor of the car behind the driver's seat.
Investigator Walker then went outside to the parked car and shined his half-mile flashlight into it. He also saw the clothing piled on the floor of the rear part of the car and noticed that a suit on top contained a wooden hanger bearing the name "Olympic Shop." He could also see the price tags on the sleeves. He opened the car door and picked up the suits. He noticed that each suit was on a wooden hanger and that a price tag bearing a name and numbers was still on a sleeve of each suit. The pants were uncuffed. The suits appeared to be "brand new, like they had just come off the rack." While going through the pile of clothing he observed several pairs of slacks, rolled up in a bunch. Walker next telephoned Bernardsville police headquarters to ascertain whether a clothing theft had been reported by the Olympic Shop. He was advised that such information would be relayed to him after the store owner was contacted.
Thereafter Walker began a series of individual interrogations of the defendants. Each denied knowledge of, or having seen, the clothing or the brief cases in the motor vehicle. In his investigation of Murphy, who had occupied the rear seat of the car, the investigator pointed out that the clothing *515 and briefcases were "right at his feet" and asked "how could he miss them?" Murphy still denied knowledge of any clothes having been in the car. Walker stated that he would go out to the car and bring the clothing in for Murphy to examine. The officer then brought the four suits, seven pairs of slacks and the two briefcases into the police headquarters and showed them to Murphy. Murphy continued to deny having any knowledge of the articles, as did the other defendants when shown the same.
An examination of the briefcases showed that the dividers inside had been removed, thereby permitting greater space for the storage of articles carried therein.
Thereafter the proprietor of the Olympic Shop appeared at the police headquarters and identified the suits of clothing. Walker asked Murphy "what the score is" and said, "You are caught with the goods. Why not tell me how you fellows have been operating?" The investigator testified that Murphy then said:
"I can't give you a statement, Trooper. You have got to give me a chance in court. You have got me cold."
Murphy told Walker that the three defendants operated as a three-man team; that he was the "steer man" and didn't "heist" anything; that the other two "did the work." However, Murphy refused to make any specific admission concerning the theft of the articles found in the car.
Walker thereupon notified each defendant individually that he was being placed under arrest for failing to give a good account of himself and stated that defendants most likely would be charged with possession of stolen goods. He sent Trooper Clouse outside to make a further inspection of the motor vehicle. The car trunk was locked but Clouse, by looking through an opening behind the rear seat, was able to see other clothing on the floor of the trunk. Defendants were searched but the key to the trunk was not found. Walker told Murphy that if the car keys were not produced he would get *516 a locksmith to open it. Murphy then said, "You want the keys? Why don't you ask for them." He thereupon reached down into the crotch of his underpants and produced the car keys stating, "Here are the keys. Go ahead, look into the trunk."
Trooper Clouse went to the motor vehicle and unlocked the trunk, where he found eight more suits of clothes, four of which came from M. Epstein, Inc. and four from Salny Brothers, both being clothing stores located in Morristown. When confronted with these clothes defendants also denied all knowledge of them.
(We note, parenthetically, that testimony relating to the search of the car trunk and its contents was not produced in evidence at the trial, since the eight suits there seized were involved only in the receiving charge, dismissed on the State's motion as hereinbefore set forth. Such testimony, however, was presented on the motion to suppress before trial, the denial of which is a ground of appeal in the instant case.)

I.
Defendants contend that Trooper Clouse had no right to stop their motor vehicle as it was leaving the Somerset Shopping Center; that the clothing and brief cases were not removed from the car as an incident to a valid arrest; and that no emergent circumstances authorized the entry of the vehicle and seizure of the articles without a search warrant. They allege that the search and seizure by the police were in violation of their rights under the Fourth Amendment and the exclusionary rule laid down in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), must prevail. Thus, they contend that the trial court erred in its denial of their motions to suppress such evidence.
It cannot be validly argued that Trooper Clouse had no right to stop defendants' motor vehicle. While the left turn onto Route 202-206 made by defendants was not a violation of the motor vehicle laws, the police officer, who was assigned *517 to patrol duty, was certainly justified in warning defendants that a left turn onto the highway at this point was dangerous. Nor can it be seriously contended that the officer had no right to ascertain whether the operator of the motor vehicle possessed a driver's license and the motor vehicle registration.
The primary issue on this appeal is whether the police had probable cause to believe that defendants had committed a crime so as to justify their arrest, and whether a search of the vehicle and a seizure of the articles found therein were incidental to valid arrests.
It is well settled that when a person is lawfully arrested, the police have a right, without a search warrant, to make a contemporaneous search of things under the accused's immediate control. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
Was the observation by Officer Clouse and thereafter by Investigator Walker, before defendants' car door was opened and a physical search of the clothes undertaken by Walker, an unlawful search? We conclude not. A search implies some exploratory investigation. It is not a search to observe that which is open and patent, in either sunlight or artificial light. United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202, 1204 (1927); Smith v. United States, 2 F.2d 715 (4 Cir. 1924); Petteway v. United States, 261 F.2d 53 (4 Cir. 1958). The police officers' version of their observation of the stolen clothing through the car windows, illuminated by their flashlights, shows no illegal search, nor, indeed, any search at all. United States v. Jankowski, 28 F.2d 800, 802 (2 Cir. 1928). In State v. Smith, 37 N.J. 481 (1962), police officers observed, through a crack in a door molding, a narcotic addict with a tourniquet around his arm and a hypodermic needle in his hand. They broks in, arrested the persons within the room and seized packets of heroin. The court said:
*518 "[I]t is the duty of a policeman to investigate, and we cannot say that in striking a balance between the rights of the individual and the needs of law enforcement, the Fourth Amendment itself draws the blinds the occupant could have drawn but did not. In the absence of a physical entry into premises secured by the Amendment, there is no unreasonable search. In such circumstances it has been held that the guaranteed right of privacy is not violated when a police officer, by use of his senses, detects a criminal event occurring in an area protected by the Amendment." (at pp. 496-97)
We come next to the main and vital question  was there probable cause on which the police officers could base a reasonable belief that a crime had been committed?
In the case sub judice, Trooper Clouse upon stopping defendants' car ascertained that none of the occupants possessed a driver's license and that the motor vehicle was registered in the name of Josephine Abate, who was not present. None of the occupants could produce any documents or papers identifying themselves. Upon observation by means of his flashlight the officer saw what appeared to be new clothing piled on the rear floor and seat. Men's suits were draped on hangers and bore labels and price tags still stitched to the sleeves. He made a further observation when the vehicle was parked outside the police station by flashing his half-mile searchlight through the car windows. He saw two briefcases on the rear seat, four men's suits on hangers and other clothing on the floor. One hanger bore the name "Olympic Shop." The sleeves of the suits he observed bore price tags.
Investigator Walker testified that when he made his initial observation  through the car windows  aided by his half-mile searchlight, he was able to see new suits on the original hangers, one hanger bearing the designation, "Olympic Shop, Bernardsville-Montclair." There were price tags on the sleeves and no cuffs had been tailored on the pants.
On his initial investigation Officer Clouse had probable cause to believe that two crimes had been committed by defendants, (1) theft of an automobile, and (2) receiving stolen goods. The observation by Investigator Walker through the car windows, before he opened the car door and examined the *519 clothing, likewise supported a reasonable belief that defendants had committed the crime of receiving stolen goods.
The requisite for probable cause is reasonable grounds for belief of guilt. The arresting officer does not have to have before him that degree of proof necessary to obtain a conviction, i.e., proof beyond a reasonable doubt. United States v. Gaither, 209 F. Supp. 223, 224 (D.C. Del. 1962). As the court stated in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, 1889-90 (1949),
"[I]f those standards were to be made applicable in determining probable cause for an arrest or for search and seizure, more especially in cases such as this involving moving vehicles used in the commission of crime, few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end."
The observations of the two police officers justified the conclusion that the clothing they observed was apparently stolen. The possession of stolen property is illegal; it is the equivalent of contraband, and is subject to seizure. See 17 C.J.S. Contraband, p. 510; Williams v. State, 216 Miss. 158, 61 So.2d 793, 797 (Sup. Ct. 1953); State v. McKindel, 148 Wash. 237, 268 P. 593 (Sup. Ct. 1928); State v. Hoffman, 245 Wis. 367, 14 N.W.2d 146 (Sup. Ct. 1944); State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688 (Sup. Ct. 1951). Having observed the stolen property, which was fully disclosed and in plain view, Investigator Walker was justified in opening the door of the motor vehicle and physically examining the same. The constitutional guarantees of the Fourth Amendment are to protect persons against unreasonable searches and seizures. We hold that the search of defendants' vehicle and the seizure of the stolen property were reasonable under the circumstances of this case.
A case factually similar is State v. Brooks, 57 Wash.2d 422, 357 P.2d 735 (Sup. Ct. 1961). There police officers observed defendant sitting in an automobile illegally parked in a "no-parking" zone. Upon opening the rear door of the *520 vehicle to question the defendant, a police officer observed some clothes hangers lying on the floor in the rear of the car, and some paper bags containing clothing in the front and back seats. Parts of the clothing protruding from the bags within plain view of the officer were uncuffed pants. The clothing was pulled from the bags, revealing it consisted of four men's suits with the sales tags still attached. The defendant was asked from where these articles came; he answered he neither owned them nor knew anything about them. He was arrested and subsequently convicted of grand larceny. The court stated that the officers, having observed the clothing consisting, in part, of uncuffed pants stuffed into two paper bags (a condition in which such property obtained by theft could be expected to be found), it was reasonable for the officers to believe the clothing was stolen property. It held that on the basis of such observation it was reasonable to conclude that the defendant had committed the crime of receiving stolen goods and that the officers had proper cause upon which to base an arrest. Cf. Bell v. United States, 102 U.S. App. D.C. 383, 254 F.2d 82 (1958), certiorari denied 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958); Campbell v. United States, 110 U.S. App. D.C. 109, 289 F.2d 775 (1961).
The facts in the instant case are readily distinguishable from State v. Scanlon, 84 N.J. Super. 427 (App. Div. 1964), recently decided by this court, in which case the police officer was unable to observe in plain view the stolen property in a motor vehicle before he searched the same.
Were the search of the motor vehicle and seizure of the evidence in the instant case incident to the lawful arrest? Defendants contend that the search and seizure were made prior to arrest and hence cannot be incident to the arrest. We disagree. In State v. Doyle, 42 N.J. 334 (1964), the court pointed out (1) the right to arrest must precede the search, and (2) officers cannot search in order to arrest, nor arrest because of the product of the search. The court went on to state,
*521 "This is not to say that where an arrest is valid independently of, and is not made to depend on, the search or its result, evidence produced by a search will be suppressed simply because in precise point of time the arrest does not precede the search. It is sufficient if the valid arrest and search are reasonably contemporaneous, that is, they occur as parts of a single transaction, as connected units of an integrated incident. In such a setting a search should not be condemned as constitutionally unreasonable. See Husty v. United States, 282 U.S. 694, 700, 51 S.Ct. 240, 241 75 L.Ed. 629, 632 (1931); State v. Hoover, 219 Or. 288, 347 P.2d 69, 89 A.L.R.2d 695 (Sup. Ct. 1959); Henry v. United States, supra (361 U.S. 98, at p. 106, 80 S.Ct. 168, at p. 173, 4 L.Ed.2d 134, at p. 141) (dissenting opinion); Annotation, 89 A.L.R.2d 715 (1963)." (at p. 343) (Emphasis added)
The search and seizure in the instant case, which followed the observation by the officers of the stolen goods inside the automobile, were thereafter followed by defendants' arrest. The observation, search and seizure, and the arrest, were reasonably contemporaneous and constituted "units of an integrated incident." In our view the search and seizure were incidents of a lawful arrest.
It should also be pointed out that the facts of the present case are readily distinguishable from those which existed in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), which held search and seizure of a motor vehicle, without warrant, were invalid. In Preston, the search took place after the defendants had been arrested on a charge of vagrancy and the motor vehicle had been towed to a garage for storage. It was there held that when once the accused is under arrest and in custody, a search made at another place, without warrant, is not incident to the arrest. In the present case defendants were not under arrest when the vehicle was searched. And see State v. Doyle, supra, wherein our State Supreme Court said,
"* * * [I]f the arrest without warrant is lawful the search and seizure are not invalidated solely because the officers had time to procure a search or arrest warrant. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); and, see Ker v. California, supra (374 U.S. [23], at pp. 41-42, 83 S.Ct. [1623]. at pp. 1634-1635, 10 L.Ed.2d [726], at p. 743); People v. Maddox, *522 46 Cal.2d 301, 294 P.2d 6, (Sup. Ct. 1956) cert. denied 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956)." (42 N.J., supra, at p. 343)
We hold that the court properly denied the motions to suppress the evidence.

II.
Defendant Murphy also contends that the trial court erred in denying defendants' motion for acquittal at the close of the State's case based on the alleged lack of sufficient evidence to establish the larceny.
There was no testimony that defendants were seen taking clothing from either the Olympic Shop or Carlton Shop. There was, however, ample circumstantial evidence of guilt in each instance. Both Keith McDermott and Blanche Mahler, clerks in the Olympic Shop, testified that defendants were in that establishment around 5:30 P.M. on March 13. Miss Mahler said that two of the men were carrying valises or suitcases which McDermott identified as "briefcases similar to those found in the car later that evening." Both witnesses stated that the three defendants came into the store together and then split up, two apparently looking about while the third tried on sport coats. McDermott identified the one who tried on the coats as Murphy and went on to describe his actions as follows:
"* * * [T]he defendant Murphy seemed to be an awful particular customer. It still stands out in my mind. He did not know what he wanted, just proceeded to grab coats, put them on. He kept me, as you can say, busy all the time."
McDermott's testimony gains added significance in light of Murphy's admission to the police that the three defendants operated as a team on which he acted as "steer man."
Neither McDermott nor Miss Mahler was able to say that he saw defendants take anything, even though he attempted to keep them under observation at all times as required by *523 store policy. However, both stated that it had been impossible to maintain a constant observation. Nicholas Morasco, manager of the Olympic Shop, identified the suits found in defendants' possession by size, lot number, model and price as articles belonging to the store which had not been sold to any person.
The evidence supporting the other larceny conviction is also sufficient. No one was able to place defendants as being in the Carlton Shop on the day in question. (The manager, Charles Garber, died prior to trial.) However, defendants were apprehended coming out of the Somerset Shopping Center in which the Carlton Shop was located. Milton Moskowitz, president of the store, who did the buying and maintained the records, was able to identify three pairs of men's slacks found in defendants' possession as having belonged to the store and which had not been sold. The manufacturers' names and lot numbers on the slacks corresponded to the numbers on the store's invoices, and the witness identified the pencil markings on the tags of the slacks as being the usual markings applied in his store. He recognized them to be in the handwriting of the now deceased store manager.
The disappearance of property from the place where the owner kept it, without his knowledge or consent, is evidence of theft. The unexplained possession of stolen property shortly after the theft justifies an inference that the possessor is the thief. State v. Dancyger, 29 N.J. 76, 85 (1959), certiorari denied 360 U.S. 903, 79 S.Ct. 1286, 3 L.Ed.2d 1255; 32 Am. Jur., Larceny § 136, pp. 1046-8. A conviction may be based on such evidence, whether it is direct or circumstantial, and the only question before the trial court at the close of the State's case was whether the evidence, viewed in its entirety and giving the State the benefit of all legitimate inferences to be drawn therefrom, was such that the jury could properly find beyond a reasonable doubt that defendants had stolen the clothing in question. State v. Dancyger, 29 N.J., supra, at p. 84; State v. Donohue, 2 N.J. 381, 389 (1949). It is obvious from a review of the evidence *524 that the crime charged had, in fact, been committed by someone, McGilton v. United States, 140 A.2d 190, 191 (D.C. Mun. Ct. App. 1958), and the question of defendants' guilt or innocence was properly one for the jury. The trial court did not err in denying defendants' motion for acquittal at the close of the State's case.

III.
Defendant Murphy contends that the court gave an example of circumstantial evidence in its charge to the jury which was not related to the trial testimony and was unduly harsh. After first explaining to the jury that circumstantial evidence may be sufficient to convince a jury of a defendant's guilt, the court said:
"I point out to you, if you see a man going into a room and there is only one door, no windows, with a gun in his hand and someone else was in there and you heard a shot, went in and saw the man who had been in there lying on the floor, and the man who had gone in with the gun in his hand, and the gun was smoking  although, I don't know if guns do smoke  this is circumstantial evidence. Don't be deluded by the name."
Defendants raised no objection to this portion of the charge at trial, and Murphy cites no authority for the assertion that it was prejudicial. Neither does he demonstrate in what way the court's example was harmful to his case.
Since no objection to this portion of the charge was made at trial, it may be a ground for reversal only if it was plain error, pursuant to R.R. 1:5-1, 2:5. State v. Hipplewith, 33 N.J. 300, 315 (1960). To constitute plain error, the objectionable portion of the charge must have so grievously affected defendants' rights as to convince us that it possessed a clear capacity to bring about an unjust result. State v. Long, 67 N.J. Super. 207, 212 (App. Div. 1961).
The court's example of circumstantial evidence must necessarily be considered within the context of the charge as a whole, and a reading of the full charge satisfies us that the *525 law was presented to the jury correctly, intelligently and fairly. Ristan v. Frantzen, 14 N.J. 455, 461 (1954); Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 107-08 (1950); Abramsky v. Felderbaum, 81 N.J. Super. 1, 7 (App. Div. 1963).
The judgments of conviction are affirmed.