**UNITED STATES of America ex rel. Alexander MURPHY, Plaintiff-Petitioner,**

v.

**The STATE OF NEW JERSEY and Warren Pinto, Superintendent of New Jersey State Prison Farm, Defendants-Respondents.**

**Civ. No. 399–65.**

United States District Court
D. New Jersey.

Dec. 15, 1965.

---

Alexander Murphy, pro se.

Raymond R. Tombadore, Deputy Atty. Gen., Somerset County, Somerville, N. J., for defendants.

## MEMORANDUM and ORDER

SHAW, District Judge.

Petitioner seeks the issuance of a writ of habeas corpus to release him from alleged illegal confinement at the New Jersey State Prison Farm, Rahway, New Jersey, where he has been committed to serve a term of imprisonment imposed by the Somerset County Court.

He was convicted by the Somerset County Court on Indictment 97–61–M charging him with petty larceny and on Indictment 98–61–M charging him with grand larceny. Indictment 97–61–M involved the theft of seven pairs of men's slacks found on the floor of the rear seat of an automobile in which petitioner had been an occupant. Indictment 98–61–M involved the theft of four suits of men's clothing found in the same place in the same car. There was a further indictment 99–61–M charging the receiving of stolen property consisting of eight suits of clothing found in the trunk of this car. This indictment was dismissed.

Petitioner was sentenced to serve a term of imprisonment of not less than four years and a maximum of seven years on both indictments of which he was convicted. Petitioner contends that his convictions were unlawful because the clothing he was convicted of stealing was evidence used against him at trial which had been procured by an unreasonable search of the vehicle in which he had been an occupant in contravention of his constitutional rights under the Fourth Amendment. He stresses the application of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

■ Prior to trial petitioner moved to suppress this evidence. A hearing was held and the motion was denied. He appealed his convictions to the Superior Court of New Jersey, Appellate Division. The convictions were affirmed. State v. Griffin, et al, 84 N.J.Super. 508, 202 A.2d 856 (1964). A petition for certification was denied by the New Jersey Supreme Court. The order of the Court recites denial on the merits. Petitioner has exhausted his state remedies.

■ It should be observed at the outset that while this Court has the obligation to review the record and make independent findings of fact, due deference should be accorded to the findings of fact of the Somerset County Court on the motion to suppress evidence and on the findings of fact of the Superior Court, Appellate Division, reported in State v. Griffin, et al., supra. Each court reached its conclusions after careful independent and thorough review of the evidence, finding that the search of the vehicle which brought to light the stolen clothing was a reasonable search as an incident of a lawful arrest. These courts, however, differed as to the time when the arrest actually occurred.

Upon review of the record here, the pertinent facts are found to be as follows:

Petitioner, along with Charles Griffin and Richard Patrick Cavanaugh, were stopped at approximately 6:20 P.M. on March 13, 1962 by an officer of the New Jersey State Police while they were driving out of a parking lot in the Somerset Shopping Center, Bridgewater Township. The officer had observed the 1959 Chevrolet in which they were riding make a left turn onto the highway from the parking lot. Although such a left turn was not a violation of any motor vehicle law, the officer stopped the vehicle to warn the driver that such a turn was hazardous. Upon routine request for driver's license and registration, the driver, Griffin, was unable to produce a driver's license. Registration was produced showing the vehicle to have been registered in the name of Josephine Abate. None of the occupants could identify himself. While seeking identification, the officer observed a pile of clothing partially on the rear seat and on the floor of the car. The clothing was folded over hangers and bore labels and price

tags. Two new brief cases could also be observed. Griffin was the operator of the automobile and Cavanaugh had been seated in the front with him. Petitioner occupied the rear seat.

When Griffin could not produce a driver's license and he as well as petitioner and Cavanaugh could not identify himself, the officer directed them to follow him in their car to the State Police barracks in Somerville. Detention was clearly warranted while inquiry was conducted to verify that the car had not been stolen, but borrowed as alleged, and to determine whether a driver's license had been issued to Griffin.

Petitioner and his two companions followed the officer to the State Police barracks and parked their car in the parking lot. Then, pursuant to direction of the officer, they followed him into the barracks and were directed to wait in the lobby or waiting room. They were there for approximately three-quarters of an hour while the officer conducted investigation to determine whether the automobile had been stolen and also to determine whether a Massachusetts driver's license had been issued to Griffin as related by him. It developed that no such license had been issued and that he did not have a driver's license. A telephone call to Josephine Abate, the party in whose name the vehicle was registered, verified the fact that the vehicle was not stolen. Whether it had been loaned to both Griffin and Murphy through a brother of Josephine Abate was not made clear. The arresting officer, Earl Clouse, had three years police experience as a trooper.

Thomas Edward Walker, a New Jersey State Police investigator, arrived at the police barracks at approximately 6:50 P. M. He had ten years experience as an investigator. He testified that he met Trooper Clouse on his arrival at the police barracks and that Trooper Clouse told him why the defendants were there. His testimony on this is quoted as follows:

"A. On this date, I was returning to the State Police Barracks in Somerville to continue my performance of duties. And Trooper Clouse, Earl Clouse, approached me and told me that he had stopped these three men operating a motor vehicle. He told me that he observed them coming out of the shopping center. They sort of cut in front of him. He checked them out. They could come up with no driver's license; that none of the men had any identification whatsoever on their person. He told me also in checking them that he thought they appeared to be a little fishy to him. He had noticed some clothing on the back seat, on the floor, that looked brand new to him. In other words, he said that they had the price—looked to be price tags already clipped on the sleeve, just piled on the floor behind the driver."

Thereafter the defendants were interrogated and particularly with respect to the pile of clothing that had been observed in the car. The defendants denied any knowledge of it. Petitioner who was seated next to it knew nothing of it. After several visual observations from the outside of the car which disclosed new clothing folded over hangers with brand names and price tags on the sleeves and continued denial of any knowledge of the clothing by the defendants Investigator Walker opened the door of the car after making further observations from the outside of the car. He testified:

"A. I took a half mile light out with me and I walked up to the vehicle. He told me which vehicle, where it was parked. I shined the light into the vehicle. I observed on the floor in the rear, behind the driver's seat, a large pile of clothing. It appeared to be suits, some of the clothing that I could see. There was other stuff there, like white rags, and so forth. In one particular article of clothing had a hanger, wooden hanger on it. I could see 'Olympic Shop,' just happened to be laying in the heap. I also could see on the sleeves, what appeared to be a sleeve or cuff, a price tag—several of them, in fact, sticking out here and

there. They were all heaped up in one big pile on the floor. I opened the car door. It was a two-door. I was on the right-hand side of the car. I pushed the passenger seat forward to reach into the back to get a closer look. And I could see very briefly, just when I looked, that it appeared to be several suits on the floor and they were all on their wooden hangers. Every sleeve, of what appeared to be a suit, I picked up, had a price tag, a name on it, different numbers indicating they looked brand new, like they just come off the rack. I also observed two briefcases in the car that appeared to me to be new.

Q. When did you first observe those briefcases?

A. When I looked into the car originally.

Q. Before opening the door or after?

A. Before opening the door."

Up to the point when the door was opened there had been no search of the vehicle. The clothing piled in it was in plain view and visual observation of it was first made when the police officer sought to have petitioner identify himself while he was sitting in the back seat of the car. Thereafter, further visual observation was made from the outside of the car. It was only when it became highly probable that this clothing was stolen that anything in the nature of what may be arguably called a search of the car was made by opening the door and examining the clothing more closely to verify in more detail what outside observation had already disclosed. At that time petitioner was under arrest.

■■ It would be a matter of common knowledge that one who is not a dealer in clothing or associated with a dealer would not be likely to be transporting new clothing with brand names and price tags on the sleeves piled in partial concealment on the back seat and floor of a car. Add to this the failure of petitioner to identify himself plus his concealment of the key to the car and the nature of information given during the course of interrogation and you have a situation where, in the opinion of this Court, any reasonable minded, diligent police officer would reach the conclusion that there was a probability of the commission of the offense of receiving and transporting stolen goods. The Fourth Amendment prohibits only such searches as are unreasonable. If the police officers in this case had failed to take possession of the clothing on the floor of that car on information available to them at the time it was taken, they would certainly have been derelict in their duty to the public. In fact the entire record on the proceedings conducted by Trooper Clouse and Investigator Walker shows beyond any doubt that each proceeded stage by stage in the investigation with complete moderation and respect for the rights of the individuals whom they had taken into custody. The conduct of the investigation was intelligent and the proofs reasonably obtained. The search here when it did occur was the incident of a lawful arrest.

■ The arrest occurred when Murphy with his two companions were *directed* to come to the police barracks to be detained there. The nature of the offense or offenses which Trooper Clouse and later Investigator Walker had probable cause to believe were committed varied as the investigation progressed. Ultimately the facts developed by investigation reasonably and fairly conducted pointed to the probable commission of the offense of having possession of stolen goods which were in the vehicle.

At the time Murphy was asked for identification he was seated beside a suspicious pile of partially concealed new clothing. Neither he nor either of the other occupants had a driver's license. No one could produce identification. The vehicle was registered in the name of another person. The conduct of petitioner at the police barracks tended to confirm rather than to allay his probable criminal involvement with respect to the clothing. The key to the car which had been given to him by Griffin was found to be concealed on his person. He denied

**992**

any knowledge of the existence of the clothing in the car.

█ In fact the main thrust in petitioner's argument is not directed toward an unlawful arrest. He urges in citing the case of Preston v. United States, supra, that since he was under arrest and the vehicle was in custody, there was no need to search the vehicle without a warrant. This assumes that the vehicle would not have been removed or, in the alternate, that a search warrant could be obtained before its removal. The facts in this case are not analogous to those in *Preston.* The vehicle here was not owned by petitioner but by Josephine Abate. She had been notified where the vehicle was parked and she would have had the right to come to the police barracks and take possession of it with the incriminating evidence that it contained. The police here had, as far as this record shows, no basis for impounding the car or for arresting Josephine Abate or for making a search of the vehicle if she did take possession of it. The holding in *Preston* was that the search without a warrant was too remote in time and place to be an incident of a lawful arrest. In that case the court stated:

> "Nor, since the men were under arrest at the police station and the car was in police custody at the garage, was there any danger that the car would be moved out of the locality or jurisdiction. See Carroll v. United States, supra, 267 U.S., at 153, [45 S.Ct. at 285, 69 L.Ed. 543]. We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."

Now, therefore, it is on this 15th day of December, 1965 ordered that the petition of petitioner filed herein be and the same hereby is dismissed.