**Price Jefferson DRAPER, No. 7660, Petitioner,**

**v.**

**STATE OF MARYLAND, Respondent.**

**Civ. A. No. 17006.**

United States District Court
D. Maryland.

Feb. 23, 1967.

Price Jefferson Draper, pro se.

Francis B. Burch, Atty. Gen., and R. Randolph Victor, Asst. Atty. Gen. for State of Maryland, for respondent.

## MEMORANDUM OPINION AND ORDER

WATKINS, District Judge.

Petitioner, presently incarcerated in the Maryland Penitentiary, seeks the issuance of a writ of habeas corpus. Petitioner was convicted on October 26, 1962 in the Circuit Court for Cecil Coun-

ty before Judge Edward D. E. Rollins sitting with a jury, of forgery, uttering a forged instrument and false pretenses. He had entered a plea of not guilty and was represented by court appointed counsel. He was sentenced to a term of ten years in the Maryland Penitentiary. The Maryland Court of Appeals upheld his conviction on direct appeal (Draper v. State, 1963, 231 Md. 423, 190 A.2d 643).

Petitioner then attacked his conviction collaterally under the Maryland Post Conviction Procedure Act (Section 645A et seq. of Article 27 of the Annotated Code of Maryland). His petition was denied by Judge Thomas J. Keating, Jr., of the Circuit Court for Cecil County on December 16, 1963 and leave to appeal was denied by the Maryland Court of Appeals (Draper v. Warden of Maryland Penitentiary, 1964, 235 Md. 641, 201 A.2d 496). Petitioner then applied to the Supreme Court of the United States for a writ of certiorari to review this decision.

Petitioner alleges that meanwhile a motion to strike out or modify his sentence was overruled by the Circuit Court for Cecil County on January 24, 1964 and that his appeal therefrom to the Maryland Court of Appeals was dismissed. Petitions for the issuance of a writ of habeas corpus were denied by the Circuit Court for Cecil County, the Criminal Court of Baltimore and the Circuit Court for Baltimore County on August 20, 1964, October 7, 1964 and November 13, 1964, respectively.

Petitioner's petition for a writ of certiorari to the Supreme Court of the United States to review the denial of post conviction relief (Draper v. Warden of Maryland Penitentiary, 1964, 235 Md. 641, 201 A.2d 496) was denied on June 7, 1965. (Draper v. State of Maryland, 381 U.S. 952, 85 S.Ct. 1807, 14 L.Ed.2d 725).

Petitioner next filed in this court a petition for the issuance of a writ of habeas corpus, which petition was denied in a Memorandum Opinion and Order dated January 14, 1965. Petitioner appealed from that opinion and order to the United States Court of Appeals for the Fourth Circuit. In Memorandum Decision No. 10,521, dated August 26, 1966, the United States Court of Appeals for the Fourth Circuit vacated the order denying relief and remanded the case to this court for amplification and supplementation of the record.

Pursuant to the mandate of the Court of Appeals for the Fourth Circuit, this court has obtained and thoroughly reviewed the transcript of the post conviction hearing held before Judge Thomas J. Keating, Jr., in the Circuit Court for Cecil County on December 2, 1963. In addition, the court has obtained and thoroughly reviewed the transcript of the original trial of the petitioner held before Judge Edward D. E. Rollins and a jury sitting in the Circuit Court for Cecil County on October 19, 1962.

Petitioner attacks the validity of his detention on two grounds. He first asserts that he was convicted on the basis of evidence which was a product of an illegal search and seizure. Secondly, he contends that this defense was never waived by him.

■ As to the first contention, the facts surrounding petitioner's arrest and the subsequent search and seizure are not in dispute. The arresting officer, State Trooper William J. Bienert, Jr., testified at the time of petitioner's original trial as to what occurred without contradiction by the petitioner and indeed the Trooper's testimony was corroborated by petitioner when petitioner took the stand to testify in his behalf. Accordingly this court has relied, as it may (Davis v. State of North Carolina, 4 Cir. 1962, 310 F.2d 904, 907), upon the state record as setting forth the undisputed historical facts surrounding the arrest, search and seizure. The pertinent testimony appearing at pages 4 through 8 of the transcript of petitioner's original trial may be summarized as follows. On the morning of the arrest at approximately nine o'clock while on routine patrol on United States Route 40 about a mile and a half or two miles east of Elkton, Trooper Bienert observed

a vehicle in operation displaying temporary license tags issued by the State of Delaware. Accordingly, the Trooper stopped the vehicle for a routine registration and license check. The officer approached the driver and sole occupant of the car, the petitioner; told him why the vehicle had been stopped; and asked if he could see petitioner's license and registration card. Petitioner handed the Trooper a registration card issued to one Roscoe Jones and stated that he had no driver's license, never having been issued one. Assuming that the petitioner was Roscoe Jones the officer asked for further identification and was informed that petitioner had no identification. Trooper Bienert then checked with his barracks and determined that the car in question had not as of that time been reported as stolen and that there was no record of a license ever having been issued to a Roscoe Jones. The Trooper then advised petitioner that he was under arrest for operating a motor vehicle without a license. A summons was issued charging petitioner with this offense and petitioner was informed of the amount of money required to be posted as collateral pending trial. As petitioner did not have the required amount on his person, he was told that he was entitled to try to obtain the necessary collateral by communicating by phone with friends or relatives. Petitioner requested that he be given such an opporunity. For this reason the car which petitioner had been driving was left at the scene of the arrest alongside the road and petitioner was driven by the Trooper to the sheriff's office to try to make arrangements for the raising of collateral. Upon reaching the sheriff's office the petitioner stated that he had no hope whatsoever of obtaining the necessary money. Thereupon Bienert who, having made the arrest, was responsible for the vehicle which he had stopped, returned to the scene of the arrest. Preparatory to storing the car the Trooper looked the car over and in checking out the car and its contents found a bottle of wine and three checks underneath the front seat of the vehicle. Two checks were filled out and one was blank. It was these checks which led to the petitioner's subsequent conviction of forgery, uttering a forged instrument and false pretenses.

■ The narrow question presented to this court for determination is whether the fact that the petitioner was no longer at the scene of the arrest when the search was made but had only minutes previously been taken to the sheriff's office to permit him to attempt to obtain collaterai and thus to remain at liberty renders the search of the vehicle which was incidental to and substantially contemporaneous with the arrest illegal under the principles announced in Preston v. United States, 1964, 276 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. This court does not so read the Preston case and concludes that the search was legal. The United States Court of Appeals for the Sixth Circuit having before it the question of the legality of a search of a vehicle made under similar circumstances in that the suspect was arrested and removed from the scene of arrest prior to the search of the vehicle reached the same conclusion that this court does saying:

"After Crawford had been taken away in the patrol wagon, he was no longer a danger to the officers, nor were the contents of his vehicle, in police custody, exposed to destruction or removal. As the District Judge found, 'the officers might have impounded the car until a search warrant was obtained.' Must, then, Preston be read as holding that any search without a warrant, *incident to and substantially contemporaneous with* an arrest, is illegal if at the time neither the arresting officers nor the evidence of the crime would be endangered by taking the steps necessary to obtain a search warrant? We do not believe that Preston commands such a holding.

"Preston did not overrule, but cited as existing authority, the case of United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), which we believe confirms the legality

of the search here discussed. In Rabinowitz the Supreme Court stated 'Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, because the search was otherwise reasonable * * *.' 339 U.S. 64, 70 S.Ct. 434, 94 L.Ed. 659. In our view, the conduct of the Toledo officers in this. case was 'otherwise reasonable.' It is not necessary for us to add to the full discussion and citation of relevant authorities contained in Rabinowitz. We believe that Rabinowitz controls our decision and sustains the. validity of the search that was made of Crawford's vehicle. We so hold. We do not consider that the fact that Crawford had left the scene when his automobile was searched prevented such search from being incidental to his arrest." (Crawford v. Bannan, 6 Cir. 1964, 336 F.2d 505, 507; original emphasis).

Crawford petitioned for review of this decision of the Sixth Circuit by the Supreme Court of the United States on writ of certiorari. Certiorari was denied, 1965, 381 U.S. 955, 85 S.Ct. 1807, 14 L.Ed.2d 727 and a rehearing was denied, 1965, 382 U.S. 873, 86 S.Ct. 12, 15 L.Ed.2d 116. See also: United States ex rel. Murphy v. State of New Jersey, D.N.J.1965, 260 F.Supp. 987—another case distinguishing the Preston decision and holding the search lawful, affirmed per curiam, 3 Cir. 1966, 369 F.2d 698.

On February 20, 1967, the Supreme Court in Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, distinguished Preston and upheld a search of a vehicle even where it was conceded that the search was not incident to an arrest, the court concluding that the search was reasonable on other grounds. In the instant case the search was both reasonable, incident to and substantially contemporaneous with the arrest.

In the instant case the arrest of petitioner was lawful. He was arrested for violating section 86 of Article 66½ of the Annotated Code of Public General Laws of Maryland because he was operating a motor vehicle upon a highway of the State of Maryland without a license. He was not arrested until the Trooper personally discovered that petitioner did not have a license and until the Trooper verified this fact with his barracks. Petitioner's offense was made a misdemeanor by subsection (i) of section 86 of Article 66½ and thus his arrest being for a misdemeanor committed in the presence of the arresting officer was permissible and lawful. The car bore out-of-state temporary license tags. The driver had no funds, did not have a driver's license, and could produce no identification of himself. The registration card that petitioner produced was not on his person but was in a holder attached to the sun visor in the car (Petitioner's direct testimony at original trial; transcript of said trial, page 84). Trooper Bienert stated unequivocally that his purpose in searching the car still on the arrest scene was to obtain further identification. The search was reasonable, incident to and substantially contemporaneous with a lawful arrest, and was accordingly a lawful search and the articles seized as a result thereof lawfully seized.

However, even had the search and seizure been unlawful, the petitioner would not be entitled to federal habeas corpus relief as he has no standing to complain of said search and seizure. It is a well established principle that to have standing to complain of an allegedly illegal search and seizure in a case such as this, one must assert a proprietary or substantial possessory interest in the place searched or in the articles seized. In Jones v. United States, 1960, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 the Supreme Court of the United States stated:

\* \* \* \* \* \*

"Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy. \* \* \* To es-

tablish 'standing,' Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had *a substantial possessory interest* in the premises searched." (Emphasis supplied).[1]

Petitioner claimed neither type of interest at the time of his original trial. In fact he vehemently denied either a proprietary or possessory interest in the car or in the articles seized. He took the stand to testify in his own behalf at his original trial. In essence his story was that the day before his arrest he met a man named Roscoe Jones. Jones asked the petitioner to accompany him to Baltimore and the two started off in Jones's car. En route they stopped in Elkton, Maryland where Jones tried to locate a friend of his and had certain repairs made to his car. Resuming their journey Jones and the petitioner arrived in Baltimore where they spent the evening drinking in a club on Pennsylvania Avenue and ended up by purchasing a case of beer and going to the house of a friend of Jones to consume the beer and spend the night. How petitioner acquired Jones's car *the following* day is best described in petitioner's own words:

\* \* \* \* \* \*

"And I woke up I guess about, well, it wasn't quite day, and I don't think his friend [Jones's friend] was downstairs, I am pretty sure he wasn't, but I didn't see anybody when I did wake up, and I called. He came down and told me that Jones had left with a friend of his, and that he wouldn't be back for, well, a day anyhow, that following evening, and I could wait there for him or either wait at home for him, which would be Middletown.

"So I guess I waited there about an hour, more or less getting myself together, and he told me that Jones had tried to wake me up before he left but he was unable to do so, and I borrowed I think about a dollar and something from the boy there at the house, and I left there and started up this way. And of course I was stopped by the Trooper." (Transcript of original trial, pages 83–84).

And again on cross-examination petitioner describes his acquisition of Jones's car:

"Q   And you say that Jones left you in Baltimore some place?

A   At his friend's house, that is right.

Q   Left this car in your possession?

A   *No, he didn't leave it in my possession.*

Q   Did you take it from him?

A   No."

(Transcript of original trial, page 93; emphasis supplied).

Even accepting arguendo petitioner's characterization of his acquisition of the car as not being a theft, his use of the car was certainly at the very least an unlawful, unauthorized use; being according to petitioner's own testimony a use without the knowledge of, or permission of, the owner.

■■   It is important to note at this point that the problem before this court is *not* a determination of what the true facts were and quite frankly for what it is worth this court might state that it finds petitioner's testimony as to non-ownership of the car and lack of knowledge even as to the existence of the

1. For a discussion of what does or does not constitute a substantial possessory interest in a vehicle see: Shurman v. United States, 5 Cir. 1955, 219 F.2d 282, 288, cert. den. 1955, 349 U.S. 921, 75 S. Ct. 661, 99 L.Ed. 1253; United States v. Eldridge, 4 Cir. 1962, 302 F.2d 463, 464; Williams v. United States, 10 Cir. 1963, 323 F.2d 90, 94–95, cert. den. 1964, 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605; Weed v. United States, 10 Cir. 1965, 340 F.2d 827, 829; and United States v. Grosso, 3 Cir. 1966, 358 F.2d 154, 163, cert. granted on another point, 385 U.S. 810, 87 S.Ct. 47, 17 L.Ed.2d 53.

forged checks completely incredible.[2] What is the issue is what did petitioner under oath at the time of his original trial claim the true facts to be. Such testimony is binding upon him and it is through such testimony that his "standing" is established or fails of establishment. Petitioner at the time of his arrest, at the time of his original trial, and *still* at the time of his post conviction hearing[3] categorically denied *any* proprietary or *any* possessory interest, a fortiori a "substantial" possessory interest, in the vehicle searched or in the checks seized. Thus he cannot be heard under any circumstances to complain of the search or seizure herein involved.

Because of the view that this court takes as to the lack of standing of petitioner to complain of the search and seizure it becomes unnecessary, and would indeed be fruitless, to consider the issue of waiver. The situation in the instant case can best be described either as one in which a petitioner cannot assert non-waiver of a defensive tactic which was not available to him in the first place or as one in which, having made the defensive tactic unavailable by his own testimony, he is conclusively bound to that choice on the basis of, or on the theory of, a knowing, intentional waiver thereby of a possible resort to such a tactic.

Accordingly, the petition for the issuance of a writ of habeas corpus is hereby denied.

Leave to file in forma pauperis has heretofore been granted to petitioner.

The Clerk is hereby instructed to send a copy of this Memorandum Opinion and Order to the petitioner and to the Attorney General of the State of Maryland.

2. "Q One other thing, Draper: You knew these checks were in this car that you were riding in, this Mercury, did you not?
A I had no idea.
Q You had no idea?
A No, sir.
Q Never saw them before?

A Not till the officer there showed them to me."
(Transcript of original trial, page 103).

3. For example, see pages 10, 36–38 and 39–40 of the Transcript of the post conviction hearing as illustrative of the tenor of petitioner's testimony.