238 N.J. Super. 546 (1990)
570 A.2d 451
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WAYNE JOHN MURPHY AND REGINALD C. BOYD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 23, 1990.
Decided February 15, 1990.
*547 Before Judges MICHELS and DEIGHAN.
*548 Alan A. Rockoff, Middlesex County Prosecutor, attorney for appellant (Wade S. Baker, Assistant Prosecutor, of counsel and on the brief).
Thomas S. Smith, Jr., Acting Public Defender, attorney for respondent Reginald C. Boyd (Maureen E. Vella, Designated Counsel, of counsel and on the brief).
No brief was filed on behalf of respondent Wayne John Murphy.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Pursuant to leave granted by this court, the State appeals from an order of the Law Division that granted the motion of defendants Wayne John Murphy (Murphy) and Reginald C. Boyd (Boyd) to suppress evidence seized following a stop of their motor vehicle by New Jersey State Trooper John Quigley (Trooper Quigley).
Defendants were indicted by the Middlesex County Grand Jury and charged with possession of cocaine in a quantity of one-half ounce or more with at least 3.5 grams of the pure free base drug with intent to distribute in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(2) (Count 1) and possession of cocaine in violation of N.J.S.A. 2C:35-10(a)(1) (Count 2). In addition, Boyd was charged with preventing Trooper Quigley from effecting a lawful arrest by using physical force or violence in violation of N.J.S.A. 2C:29-2 (Count 3).
Prior to trial, defendants moved to suppress the cocaine seized by Trooper Quigley on the ground that it was the subject of an illegal warrantless search and seizure. According to the proofs at the suppression hearing, on December 11, 1987 at approximately 4:00 p.m. Trooper Quigley observed defendants' vehicle traveling south on the New Jersey Turnpike. The vehicle had a single license plate stuck in the rear window. Trooper Quigley testified that the license plate was stuck in the weather stripping in a diagonal position and that he believed *549 that this violated the licensing display provisions of N.J.S.A. 39:3-33. Trooper Quigley activated his overhead lights in an attempt to stop the vehicle. Murphy  the driver  pulled the vehicle into the left side of the roadway despite repeated hand signals and a loud speaker announcement by Trooper Quigley to move into the right shoulder. While the vehicle was in the left side of the roadway, the trooper noticed defendants making furtive movements inside the vehicle. Specifically, Trooper Quigley observed defendants reaching below the dashboard while they looked directly at him. The vehicle then moved to the right shoulder of the highway. Trooper Quigley approached the vehicle with his weapon drawn because he feared for his safety as a result of the conduct exhibited by these defendants.
Trooper Quigley asked Murphy to step outside of the vehicle. As Murphy got out of the vehicle, Trooper Quigley observed two large druggist folds protruding from the top of Murphy's sneakers. Trooper Quigley recognized these folds as a common way of packaging drugs and confiscated them. The folds contained a white powdery substance which Trooper Quigley believed to be cocaine. He placed Murphy under arrest and read him his Miranda rights. Trooper Quigley then ordered Boyd out of the vehicle. Boyd resisted arrest and a struggle ensued. During the struggle, a plastic bag of what appeared to be cocaine was dislodged from Boyd's waistband and fell to the ground. Trooper Quigley arrested Boyd and read him his Miranda rights. Trooper Quigley searched Boyd and discovered four folds of suspected cocaine in Boyd's pants.
At the conclusion of the proofs, the trial court granted defendants' motion to suppress the cocaine. The trial court reasoned that the vehicle complied with the licensing display provisions of the motor vehicle statute and, therefore, Trooper Quigley did not have probable cause to stop the vehicle. The State now contends that the trial court erred in suppressing the evidence because Trooper Quigley had a reasonable and articulable suspicion that a motor vehicle violation had occurred, and, *550 therefore, was justified in stopping the vehicle. We agree and reverse.
Both the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution protect "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV; N.J. Const. Art. 1, ¶ 7. "The Fourth Amendment does not, however, proscribe all searches and seizures. Rather, it only proscribes those that are judicially deemed unreasonable." State v. Anderson, 198 N.J. Super. 340, 348, 486 A.2d 1311 (App.Div.), certif. den. 101 N.J. 283, 501 A.2d 946 (1985). See State v. Davis, 104 N.J. 490, 498-499, 517 A.2d 859 (1986); State v. Bruzzese, 94 N.J. 210, 216-217, 463 A.2d 320 (1983), cert. den., 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984); State v. Campbell, 53 N.J. 230, 233, 250 A.2d 1 (1969). Indeed, "the touchstone of the Fourth Amendment is reasonableness." State v. Bruzzese, supra, 94 N.J. at 217, 463 A.2d 320. In cases involving warrantless searches, the burden is on the State to prove the overall reasonableness and validity of the search. Id. at 218, 463 A.2d 320.
The resolution of such Fourth Amendment issues is particularly dependent upon the facts involved. Commonly, such constitutional issues involve no more than a seasoned "value judgment upon a factual complex rather than an evident application of a precise rule of law." State v. Funicello, 60 N.J. 60, 72, 286 A.2d 55 (Weintraub, C.J., concurring), cert. den., sub nom. New Jersey v. Presha, 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1972). This is especially true with regard to investigatory stops and detentions. Our Supreme Court has held that under a narrowly defined and controlled set of circumstances, such detentions can be constitutionally permissible, although based on less than probable cause. In State v. Hall, 93 N.J. 552, 561, 461 A.2d 1155, cert. den., 464 U.S. 1008, 104 *551 S.Ct. 526, 78 L.Ed.2d 709 (1983), the Court pointed out in a somewhat related context that:
Our reading of Davis [v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969)] convinces us that for certain detentions  those that do not entail significant intrusions upon individual privacy or freedom, are productive of reliable evidence, and can be effectuated without abuse, coercion or intimidation  "no probable cause in the traditional sense" is necessary in order to obtain the "authorization of a judicial officer[.]" We conclude that, under a "narrowly defined" set of circumstances, such detentions can be constitutionally permissible. Davis, 394 U.S. at 727-28, 89 S.Ct. at 1398, 22 L.Ed.2d at 681. Strictly limiting the circumstances under which such detentions take place insures that the restrictions upon individual privacy and freedom interests are minimized so that a showing of need upon less than traditional probable cause can be tolerated. See United States v. Place, supra, [462] U.S. [696] at [703], 103 S.Ct. [2637] at 2642 [77 L.Ed.2d 110 (1983)] (minimally intrusive detention can be supported on less than probable cause); Terry v. Ohio, supra, 392 U.S. [1] at 27, 88 S.Ct. [1868] at 1883, 29 L.Ed.2d [889] at 909 [(1968)] (permitting police to conduct "stop and frisk" upon less than probable cause); Michigan v. Long, [463] U.S. [1032], 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (permitting police to conduct protective search for weapons in passenger compartment of car upon less than probable cause); cf. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (permitting search upon probable cause determined by administrative standards).
Other jurisdictions that have considered the question have balanced the nature and extent of the intrusion on the individual's privacy rights against the governmental interest in securing evidence of criminality. See United States v. Wylie, 569 F.2d 62, 66-67 (D.C. Cir.1977), cert. den. 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978); Wilkerson v. United States, 427 A.2d 923, 925-926 (D.C.App. 1981), cert. den. 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981).
In Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968), the Supreme Court concluded:
[T]hat there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.
In determining whether the officer acted reasonably in the circumstances, "due weight must be given, not to his inchoate *552 and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id.
The Supreme Court extended the logic of Terry to the analysis of vehicular stops in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In Prouse the Supreme Court applied the exclusionary rule to marijuana seized in plain view on the floor of a car stopped by a policeman who testified that he had observed neither traffic nor equipment violations nor any other suspicious activity associated with the car. The officer stopped the car merely to check the driver's license and registration. In excluding the evidence, the Supreme Court stated that:
[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. [Prouse, 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673].
See Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Accord, State v. Gervasio, 94 N.J. 23, 462 A.2d 144 (1983); State v. Bell, 195 N.J. Super. 49, 477 A.2d 1272 (App.Div. 1984).
The Supreme Court in Prouse also noted that "[a]utomobile travel is a basic, pervasive, and often necessary mode of transportation" and that "many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel." Prouse, supra, 440 U.S. at 662, 99 S.Ct. at 1400-1401, 59 L.Ed.2d at 673. Nevertheless, investigatory stops of automobiles are justified by
the reduced expectations of privacy of an occupant of an automobile, id. [United States v. Martinez-Fuerte], 428 U.S. [543] at 561, 96 S.Ct. [3074] at 3084-85, 49 L.Ed.2d [1116] at 1130 [(1976)], "the long history evidencing [the] utility" of brief stops for questioning, id. at 560 n. 14, 96 S.Ct. at 3084 n. 14, 49 L.Ed.2d at 1130 n. 14, and the acceptance by the public of such stops "as incident to highway use." Ibid. See also Brinegar v. United States, 338 U.S. *553 160, 188, 69 S.Ct. 1302, 1317, 93 L.Ed. 1879, 1897 (Jackson, J., dissenting) reh. den. 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949) (officials may stop car without probable cause for regulation of traffic, identification where proper and in many other circumstances that do not imply an arrest or charge of crime). This notion of a reduced expectation of privacy in the use of an automobile may be instructively contrasted with the "special protection [accorded] to the home" that was emphasized by the Supreme Court in [United States v.] Johnson [457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)] in reaching its conclusion that the Payton [v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)] decision be given retroactive effect. 457 U.S. at 552 n. 13, 102 S.Ct. at 2589 n. 13, 73 L.Ed.2d at 215 n. 13. [State v. Gervasio, supra, 94 N.J. at 29, 462 A.2d 144].
Thus, it has been held that law enforcement officials may stop motor vehicles where they have a reasonable or articulable suspicion that a motor vehicle violation has occurred. See, e.g., New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (defendant stopped for driving above the speed limit in a car with a cracked windshield in violation of traffic laws); Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (holding stop valid where police officers stopped vehicle with an expired license plate for the purpose of issuing a traffic summons); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (State and local enforcement agencies may conduct limited stops to enforce laws regarding driver's licenses, vehicle registration, truck weights and similar matters); State v. Carter, 235 N.J. Super. 232, 561 A.2d 1196 (App.Div. 1989) (trooper had reasonable grounds to stop the vehicle for motor vehicle violation where trooper observed vehicle tailgating another car); State v. Pierce, 190 N.J. Super. 408, 463 A.2d 977 (App.Div. 1983) (trooper had right to stop motor vehicle for violations of the motor vehicle law); State v. Nugent, 125 N.J. Super. 528, 312 A.2d 158 (App.Div. 1973) (trooper had right to stop car in which defendants were riding when he observed that there was a hanging license plate and broken right lens); State v. Griffin, 84 N.J. Super. 508, 202 A.2d 856 (App.Div. 1964) (trooper had right to stop defendant's vehicle to warn defendants that a left turn on the highway, although not a violation of motor vehicle laws, was dangerous). The fact that a defendant is "subsequently *554 found not guilty of a motor vehicle violation does not impugn the propriety of the initial stop." State v. Nugent, supra, 125 N.J. Super. at 534, 312 A.2d 158.
Applying these fundamentally sound principles here, there cannot be the slightest doubt that Trooper Quigley had an articulable and reasonable suspicion that a motor vehicle violation had occurred necessary to justify the investigatory stop and detention of defendants' vehicle. We, therefore, are satisfied that the trial court erred in granting defendants' motion to suppress the evidence seized by Trooper Quigley. Contrary to the trial court's conclusion, all that was required for Trooper Quigley to stop the vehicle was a reasonable and articulable suspicion that a motor vehicle violation had occurred. See Delaware v. Prouse, supra. Such standard requires less than the probable cause standard that the trial court applied in this case. See State v. Davis, supra, 104 N.J. at 501, 517 A.2d 859.
Trooper Quigley had a reasonable and articulable suspicion that the license plate was displayed in violation of N.J.S.A. 39:3-33, which provides in pertinent part:
The owner of an automobile which is driven on the public highways of this State shall display not less than 12 inches nor more than 48 inches from the ground in a horizontal position, and in such a way as not to swing, an identification mark or marks to be furnished by the division; provided, that if two marks are issued they shall be displayed on the front and rear of the vehicle; and provided, further, that if only one mark is issued it shall be displayed on the rear of the vehicle....
Defendants' license plate was not conspicuously displayed. It was placed in a diagonal position, not a horizontal position, as required by the statute. Moreover, Trooper Quigley believed that the license plate should be permanently affixed to the rear bumper and not placed in the weather stripping of the rear window. Trooper Quigley had a working knowledge of the statute's contents and, based on his experience, believed that the vehicle would not pass inspection and that the location of the license plate violated the licensing display provisions of our motor vehicle statute. In our view, Trooper Quigley's belief in this regard was objectively reasonable and satisfies the test *555 enunciated in State v. Bruzzese, supra, 94 N.J. at 219-220, 463 A.2d 320.
Finally, we point out that it appears from the testimony of Trooper Quigley that Murphy, the driver, was cited for a motor vehicle violation, contrary to the trial court's finding in this regard. However, even if Murphy were not found guilty of the motor vehicle violation, such would not "impugn the propriety of the initial stop." State v. Nugent, supra, 125 N.J. Super. at 534, 312 A.2d 158.
Since we are satisfied that the stop of the vehicle passed constitutional muster, it follows that the cocaine seized was not the "fruit of the poisonous tree." See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Trooper Quigley had the authority to ask Murphy and Boyd to get out of the vehicle. See Pennsylvania v. Mimms, supra, 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 337; State v. Anderson, supra, 198 N.J. Super. at 351, 486 A.2d 1311; State v. Nittolo, 194 N.J. Super. 344, 346, 476 A.2d 1253 (App.Div. 1984). When Murphy stepped outside of the vehicle, Trooper Quigley observed two large druggist folds protruding from the top of Murphy's sneakers. Based on his years of training and experience, including numerous drug arrests, Trooper Quigley properly recognized these folds as a common way of packaging drugs, and, therefore, seized the contraband. The contraband was in plain view and Trooper Quigley had probable cause to seize the contraband and place Murphy under arrest. See Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Bruzzese, supra; State v. Patino, 83 N.J. 1, 414 A.2d 1327 (1980); State v. Anderson, supra.
*556 Thereafter, following Murphy's arrest, Trooper Quigley instructed Boyd to get out of the vehicle. Boyd resisted arrest and a struggle ensued. At that time, a plastic bag of what Trooper Quigley recognized as cocaine fell from Boyd's waistband to the ground in plain view. After arresting Boyd, Trooper Quigley found four folds of suspected cocaine on Boyd's person. Trooper Quigley unquestionably had probable cause to seize the cocaine, to arrest Boyd and to search him incidental to that arrest. State v. Anderson, supra, 198 N.J. Super. at 351, 486 A.2d 1311. See also State v. Griffin, supra, 84 N.J. Super. at 517, 202 A.2d 856.
Accordingly, the order of suppression under review is reversed and the matter remanded to the trial court for further proceedings. We do not retain jurisdiction.