278 N.J. Super. 93 (1994)
650 A.2d 397
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBIN W. BUTLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1994.
Decided December 20, 1994.
*97 Before Judges MICHELS, KEEFE and HUMPHREYS.
Vincent W. Basile argued the cause for appellant (Flood & Basile, attorneys; Mr. Basile, of counsel and on the brief).
Andrew C. Samson, Assistant Bergen County Prosecutor, argued the cause for respondent (John J. Fahy, Bergen County Prosecutor, attorney; Mr. Samson, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Robin W. Butler was convicted of possession of a handgun without having obtained a permit to carry the same, a crime of the third degree, in violation of N.J.S.A. 2C:39-5b (First Count) and possession of cocaine, a crime of the third degree, in violation of N.J.S.A. 2C:35-10a(1) (Second Count). The trial court denied defendant's motion for a new trial and committed him to the custody of the Commissioner of the Department of Corrections (Commissioner) for five years with a two and one-half year period of parole ineligibility and assessed a $30 Violent Crimes Compensation Board (VCCB) penalty for his conviction for unlawful possession of a handgun under the First Count. In addition, the trial court committed defendant to the custody of the Commissioner for a concurrent term of five years with a two and one-half year period of parole ineligibility, assessed a $30 VCCB penalty, a $1000 Drug Enforcement Demand Reduction penalty and a $50 laboratory fee, and suspended defendant's driver's license for twenty-four months for his conviction for possession of cocaine under the Second Count. On defendant's motion for a modification of his sentences, the trial court reduced the parole ineligibility periods imposed for each conviction from two and one-half years to two years. Defendant appeals and seeks a reversal of his convictions, or, alternatively, a modification of the sentences.
*98 According to the State's proofs, on June 17, 1989, at approximately 12:30 a.m., Police Officers Stephen Chromanski (Chromanski) and William Sutera (Sutera) of the Fort Lee Police Department were on routine patrol in the vicinity of the Courtesy Motel situated on Route 4 eastbound in Fort Lee. Upon entering the parking area of the motel, they observed defendant sitting in a vehicle with its driver's side rear vent window broken and the engine running. At that time, the officers called police headquarters to report that they were about to investigate a suspicious vehicle.
Sutera approached the driver side of the vehicle while Chromanski proceeded to the passenger side. The officers asked defendant for his license, registration and insurance card. Defendant replied that he did not have proof of insurance or registration, and requested permission to exit the car so that he could remove his license from his jacket.
Before defendant could reach into his jacket, Sutera patted him down. During the pat-down Sutera felt what appeared to be a bullet proof vest. According to Sutera, it was unusual for him as a police officer, "to come across someone wearing a bullet proof vest," and this "made [him] fear for his safety." Sutera directed defendant to place his hands on top of the vehicle and Chromanski conducted a further search of defendant. Chromanski testified at trial that during the course of this search he felt a hard object in defendant's pocket which he believed to be a firearm speed loader. As a result, he searched defendant's pocket, finding and removing what was actually a plastic bag containing marijuana and a silver foil packet containing hashish.
Defendant was placed under arrest. Sutera then searched the area of the vehicle's glove compartment. While conducting this search, he discovered a blue .357 magnum Colt Python revolver loaded with six rounds of .357 magnum hollow point ammunition beneath the front passenger seat. Defendant was transported to the Fort Lee Police Station where he underwent a strip search, which exposed the bulletproof vest worn underneath his clothes. *99 Additionally, the search revealed a pack of "Easy Rider" rolling papers and a folded five-dollar bill containing cocaine.

I.
Defendant first contends that by conducting his criminal prosecution in his absence the trial court violated his rights under the Sixth Amendment of the United States Constitution and Article 1, Paragraph 10 of the New Jersey Constitution. Those provisions guarantee a criminal defendant "the right to be confronted with the witnesses against him." An essential element of this guarantee is the right of the accused to be present in the courtroom at every stage of the trial. Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); State v. Hudson, 119 N.J. 165, 171, 574 A.2d 434 (1990).
A defendant's right to be present at trial provides protections on both an individual and institutional level.[1] It affords a defendant the ability to communicate with counsel during trial, and assist in preparation of the defense and in the process of *100 cross-examination. Hudson, supra, 119 N.J. at 172, 574 A.2d 434. It includes the independent right of a defendant to represent himself or herself at all stages of a criminal proceeding if he or she elects to do so. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Institutionally, a defendant's right to be present at trial ensures public confidence in the courts as instruments of justice. United States v. Peterson, 524 F.2d 167, 184 (4th Cir.1975), cert. denied sub nom., Smith v. United States, 424 U.S. 925, 96 S.Ct. 1136, 47 L.Ed.2d 334 (1976); Hudson, supra, 119 N.J. at 172, 574 A.2d 434.
However, as early as Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), the United States Supreme Court concluded that a defendant's presence at every stage of a non-capital trial was not "indispensable." The Supreme Court in Diaz, supra, emphasized the potentially disruptive effect of a rule barring a trial from proceeding whenever a defendant elects not to be present, stating:
It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to admit it.
[Id. at 454, 32 S.Ct. at 254].
Following a number of federal and state decisions, which generally permitted courts to infer that a defendant waived the right to be present at trial if he or she failed to appear after having received adequate notice of the date, time, and place of trial and of the right to be present, Hudson decided the issue definitively in New Jersey.
In Hudson, defendants were present in court on June 3, 1985, when the court set a trial date for June 18, 1985. The defendants *101 showed up on the morning of the trial, but failed to return in the afternoon. The New Jersey Supreme Court held that the absence of defendants at trial, when they knew of the date, time and place of such trial, did not invalidate the trial which was conducted in their absence. The Court reasoned:
... the absence [of a defendant who is absent before trial has begun or one who leaves the trial after commencement of the proceedings] indicates a defiance of the judicial system and can lead to a severe disruption of the criminal calendar. Thus, a literal construction of Rule 3:16 would permit a defendant to postpone his criminal trial simply by leaving the courtroom before trial starts. We are certain that Rule 3:16 was never intended to vest in defendants the power to decide whether trial should proceed as scheduled. Accordingly, we construe Rule 3:16 in a manner consistent with the prevailing case law, and hold that a defendants' knowing, voluntary, and unjustified absence before or after trial has commenced does not prevent trial from proceeding in absentia. (citations omitted).
[Id. at 181-82, 574 A.2d 434].
Here, defendant had notice of his scheduled trial date since he was at the hearing conducted four days prior to trial. At that time, the trial court set October 15, 1994, as the time for commencement of trial. As stated in Hudson, "[t]he clearest evidence of such knowledge is the defendants' presence in court on the day the matter was set for trial." Id. 119 N.J. at 183, 574 A.2d 434. Just as in Hudson, defendant's knowledge of the trial date, coupled with his failure to show up for trial, indicates a waiver of his right to be present at trial. Defendant's inexcusable absence from trial, under circumstances demonstrating knowledge of the time and place of trial and his right to be present, constituted a sufficient basis for the trial court's decision to proceed to trial without defendant being present.
Consequently, under the circumstances, we hold that the trial court did not violate defendant's constitutional rights by proceeding to trial in his absence.

II.
Defendant also contends that the trial court erred in denying his motion to suppress the physical evidence seized pursuant to the warrantless search. We disagree.
*102 Both the Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution protect "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures..." U.S. Const., amend. IV; N.J. Const. Art. 1, § 7. The Fourth Amendment does not, however, proscribe all searches and seizures. Rather it only proscribes those that are judicially deemed unreasonable. State v. Foreshaw, 245 N.J. Super. 166, 171-172, 584 A.2d 832 (App.Div.), certif. denied, 126 N.J. 327, 598 A.2d 886 (1991); State v. Murphy, 238 N.J. Super. 546, 550, 570 A.2d 451 (App.Div. 1990); State v. Anderson, 198 N.J. Super. 340, 348, 486 A.2d 1311 (App.Div.), certif. denied, 101 N.J. 283, 501 A.2d 946 (1985). See also State v. Davis, 104 N.J. 490, 498-99, 517 A.2d 859 (1986); State v. Bruzzese, 94 N.J. 210, 216-17, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). "The touchstone of the Fourth Amendment is reasonableness." Bruzzese, supra, 94 N.J. at 217, 463 A.2d 320. And, "[c]ommonly, such constitutional issues involve no more than a seasoned value judgment upon a factual complex rather than an evident application of a precise rule of law." Foreshaw, supra, 245 N.J. Super. at 172, 584 A.2d 832.
Under both the United States and New Jersey constitutions, a police officer has the authority to detain individuals without a warrant, on less than probable cause. See Terry v. Ohio, 392 U.S. 1, 26-27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Davis, supra, 104 N.J. at 502-504, 517 A.2d 859. And, in order to pass constitutional muster, the stop must be predicated upon specific and articulable suspicion that a person has been or is about to engage in criminal activity. United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); Davis, supra, 104 N.J. at 504, 517 A.2d 859. The Court in Davis noted:
A police officer charged with the duty of crime prevention and detection of the public safety must deal with a rich diversity of street encounters with citizens. In a given situation, even though a citizen's behavior does not reach the level of *103 "highly suspicious activities," the officer's experience may indicate that some investigation is in order. Depending on the circumstances, street interrogation may be most reasonable and proper.
[Id. at 503, 517 A.2d 859].
The New Jersey Supreme Court has held that under a narrowly defined and controlled set of circumstances, investigatory stops and detentions are constitutionally permissible even though based on less than probable cause. In State v. Hall, 93 N.J. 552, 561, 461 A.2d 1155, cert. denied, 464 U.S. 1008, 104 S.Ct. 526, 78 L.Ed.2d 709 (1983), the Court explained:
Our reading of Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), convinces us that for certain detentions  those that do not entail significant intrusions upon individual privacy or freedom, are productive of reliable evidence, and can be effectuated without abuse, coercion or intimidation  "no probable cause in the traditional sense" is necessary in order to obtain the "authorization of a judicial officer[.]" We conclude that, under a "narrowly defined" set of circumstances, such detentions can be constitutionally permissible. Davis, 394 U.S. at 727-28, 89 S.Ct. at 1398, 22 L.Ed.2d at 681. Strictly limiting the circumstances under which such detentions take place insures that the restrictions upon individual privacy and freedom interests are minimized so that a showing of need upon less than traditional probable cause can be tolerated. See United States v. Place, supra, [462] U.S. [696] at [703], 103 S.Ct. [2637] at 2642 [77 L.Ed.2d 110 (1983)] (minimally intrusive detention can be supported on less than probable cause); Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d 889 (1983) (permitting police to conduct "stop and frisk" upon less than probable cause); Michigan v. Long, [463] U.S. [1032], 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (permitting police to conduct protective search for weapons in passenger compartment of car upon less than probable cause); cf. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (permitting search upon probable cause determined by administrative standards).
In evaluating whether an officer has acted reasonably under the circumstances, "due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, supra, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. In other words, the test for reasonable suspicion is whether "[b]ased upon the whole picture the detaining officer [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." *104 State v. Thomas, 110 N.J. 673, 678, 542 A.2d 912 (1988) (quoting Cortez, supra, 449 U.S. at 417, 101 S.Ct. at 694-95 (1981)).
The Court in Davis, summarized this principle as follows:
New Jersey has long recognized that a temporary street-detention based on less than probable cause may be constitutional. In a pre-Terry decision, we recognized that a police officer's duties include vital preventive roles and that reason and common sense dictate "he should clearly have the right to stop persons on the street for summary inquiry where, as here, the circumstances are so highly suspicious as to call for such an inquiry."
[Id. at 503, 517 A.2d 859].
See also State v. Doos, 254 N.J. Super. 122, 128, 603 A.2d 102 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992); Murphy, supra, 238 N.J. Super. at 550-52, 570 A.2d 451; State v. Kuhn, 213 N.J. Super. 275, 280-281, 517 A.2d 162 (App.Div. 1986). In particular, an unconventional parking style and an engine in operation are additional factors which can augment an officer's suspicions. See State v. George, 257 N.J. Super. 493, 495-496, 608 A.2d 957 (App.Div. 1992).
Here, the officers had the requisite reasonable and articulable suspicion that defendant was engaged in criminal activity. Several factors support the validity of the officer's actions, including: (a) the late hour of the night; (b) defendant's car engine was running; (c) defendant's rear vent window was broken; (d) defendant was sitting alone in the car; (e) defendant's car was parked unusually far from the registration office; and (f) defendant was in a high crime neighborhood.
In addition to permitting an investigatory stop based on "particularized suspicion," Terry also authorizes an officer to conduct a limited pat-down frisk of the outer clothing of the person subjected to a stop, in an attempt to discover weapons which might be used to assault him or those nearby. Terry, supra, 392 U.S. at 27-31, 88 S.Ct. at 1883. The Court stated:
The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger ... And in determining whether the officer acted reasonably in such circumstances, due weight must be *105 given, not to his inchoate and unparticularized suspicion or "hunch" but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.
[Id. at 27, 88 S.Ct. at 1883].
New Jersey courts have held that the lateness of the hour and high-crime status of an area are two important factors which can typically elevate an officer's suspicion that a person is armed and dangerous. See State v. Valentine, 134 N.J. 536, 547, 636 A.2d 505 (1994); State v. Lund, 119 N.J. 35, 48, 573 A.2d 1376 (1990); State v. Otero, 245 N.J. Super. 83, 92, 584 A.2d 260 (App.Div. 1990).
Here, the officers had an articulable and reasonable belief that their safety might be in jeopardy, when they saw defendant in his car and in a high-crime neighborhood shortly after midnight. When defendant exited his car and requested that he be able to reach into his pocket to remove his driver's license, the officers acted reasonably when they patted him down. It was entirely reasonable for the officers to believe that defendant might be armed and, therefore, properly patted him down to protect themselves from foreseeable harm. The officers conduct in this regard falls within the proper scope of a protective search justified by reasonable suspicion under the principles discussed in Terry, supra, Valentine, supra and Lund, supra. See also Minnesota v. Dickerson, 508 U.S. ___, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).
State v. Jackson, 276 N.J. Super. 626, 648 A.2d 738 (App.Div. 1994), is distinguishable from the facts of our case and does not support a contrary conclusion. In Jackson, the State stipulated and the police officer later testified that the object contained in defendant's jacket pocket did not feel like a weapon. Yet, the officer continued to explore defendant's jacket pocket even after concluding that the object was not a gun. This was not the situation here.
In sum, the officers' conduct was legally valid in light of the legitimate concerns they had for their safety. In this regard, the language of Chief Justice Hughes in State in the Interest of H.B., *106 75 N.J. 243, 252, 381 A.2d 759 (1977), is still most appropriate and worthy of repeating:
While this court has not been reticent in going beyond naked constitutional right as defined by the United States Supreme Court, we think we should not so act in the circumstances here. To do so in the face of the violent climate of the times and the universal threat of handguns, particularly to the policeman as he carries out official duties, would seem foolhardy and wrong, and needlessly expose society and the police community to serious risk of death or injury.
Consequently, we hold that the trial court properly denied defendant's motion to suppress the evidence.

III.
Finally, we are satisfied that the sentences imposed upon defendant were neither illegal nor excessive. The sentences complied with the provisions of the New Jersey Code of Justice and resulted from the trial court's thorough analysis and careful weighing of the aggravating factors against the non-existent mitigating factors. The trial court found three aggravating factors: the need for deterring defendant and others from violating the law (N.J.S.A. 2C:44-1a(9)); the risk that defendant would commit another offense (N.J.S.A. 2C:44-1a(3)) and defendant's prior record (N.J.S.A. 2C:44-1a(6)). The totality of the aggravating factors substantially outweighed the non-existing mitigating factors, and, justified the sentences imposed upon defendant. The trial court's findings in this regard are amply supported by the record.
In our view, the concurrent five-year terms with concurrent two-year periods of parole ineligibility imposed upon defendant for his convictions for possession of a handgun without first having a permit to carry the same and possession of cocaine, are neither manifestly excessive nor unduly punitive. They do not represent a miscarriage of justice or shock the judicial conscience. State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); State v. Jarbath, 114 N.J. 394, 401, 555 A.2d 559 (1989); State v. Ghertler, 114 N.J. 383, 387-88, 393-94, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984).
*107 Accordingly, the judgment of conviction and order for commitment under review are affirmed.
NOTES
[1] R. 3:16, which was in effect at the time of trial, provided:

The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by rule, but the defendant's voluntary absence after trial has commenced in his presence shall not prevent its continuing to and including the return of the verdict.... The defendant's presence is not required at a reduction of sentence under R. 3:21-10. After this matter had been tried, R. 3:16 was amended, effective September
1, 1992, and now provides:
The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, unless otherwise provided by Rule. Nothing in this Rule, however, shall prevent a defendant from waiving the right to be present at trial. A waiver may be found either from (a) the defendants' express written or oral waiver placed on the record, or (b) the defendants' conduct evidencing a knowing, voluntary, and unjustified absence after (1) the defendant has received actual notice in court that his or her trial will commence that day, or on the next court date, or (2) trial has commenced in defendants' presence....
The 1992 Amendment expressly permits a "defendant to waive his right to be present at trial by either a written or oral waiver or by conduct evincing what is in effect such a waiver." Pressler, Current N.J. Court Rules, comment on R. 3:16 (1995).