777 A.2d 1041

STATE IN THE INTEREST OF R.M. AND J.M.

Superior Court of New Jersey
Chancery Division Family Part
Monmouth County

February 6, 2001.

*Jason Volet*, Attorney for State.

*James Fagen, Vernon McGowen*, Attorneys for Defendants.

MELLACI, J.S.C.

This case revisits for a third time, the propriety of a motor vehicle stop predicated solely on the existence of "tinted" windows. Previously, two other trial courts have addressed this issue reaching conflicting results.

In *State v. Harrison*, 236 *N.J.Super.* 69, 564 *A.*2d 128 (Law Div.1989), the Court concluded that "tinted" windows on a motor vehicle did not constitute an articulable and reasonable suspicion that the vehicle violated our motor vehicle statutes, specifically, *N.J.S.A.* 39:3–74, and hence the existence of same did not in and of itself subject the vehicle to a stop and seizure in violation of the law.

In *Harrison*, a New Jersey State Trooper stopped a motor vehicle after having observed "tinted" windows on the vehicle.

Subsequent to the stop, a black bag was observed in the rear passenger compartment with the butt of a revolver protruding. The driver was charged with violating *N.J.S.A.* 2C:39–5b for having in his possession a handgun without a permit and was also issued a motor vehicle warning for "tinted" windows in violation of *N.J.S.A.* 39:3–74. Defendant filed a Motion to Suppress claiming the initial stop of the motor vehicle was illegal because it violated the standard in *Delaware v. Prouse,* 440 *U.S.* 648, 99 *S.Ct.* 1391, 59 *L.Ed.*2d 660 (1979).

*N.J.S.A.* 39:3–74 provides, in pertinent part, as follows:

No person shall drive any motor vehicle with any sign, poster, sticker or any non-transparent material upon the front windshield, wings, deflectors, side shields, corner lights adjoining windshield or front side windows of such vehicle other than a certificate or other article required to be so displayed by statute or by regulations of the Commissioner.

No person shall drive any motor vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the side's.

In *Harrison,* the court concluded that as a matter of statutory construction, "it is clear that tinted glass does not fall within the proscription of *N.J.S.A.* 39:3–74," 236 *N.J.Super.* at 72, 564 *A.*2d 128. The court noted that, *"N.J.S.A.* 39:3–74 was enacted in 1921, and has not been amended since 1937. Since tinted window technology was not developed until some years thereafter, the legislature could have simply amended *N.J.S.A.* 39:3–74 to specifically include tinted windows within the proscription of the statute if it was the intention of the legislature to prohibit tinted windows." *Id.*

In light of the court's holding that "tinted" windows on a motor vehicle did not give rise to an articulable and reasonable suspicion of criminal activity such as to justify a police stop of a vehicle, the Motion to Suppress was granted.

A different result was reached in *State v. Oberlton,* 262 *N.J.Super.* 204, 620 *A.*2d 468 (Law Div.1992), wherein it was held that, "tinted windows on a motor vehicle do give rise to an articulable and reasonable suspicion of a motor vehicle violation and therefore justify a police stop of the vehicle." *Id.* at 207, 620 *A.*2d 468.

While agreeing, although reluctantly, with the court in *Harrison* that *N.J.S.A.* 39:3–74, does not apply to tinted windows, the court noted that the *Harrison* court did not consider the applicability of the Administrative Code, specifically *N.J.A.C.* 13:20–33.6, which prohibits the use of tinted materials *that do not meet certain standards* (emphasis supplied).

In *Oberlton*, a Camden County police officer pulled over a white Toyota because it had "tinted" material on the windshield. Subsequent to the stop, a twenty-two (22) caliber handgun was located below the passenger seat. The defendants were then arrested for possession of a handgun in violation for *N.J.S.A.* 2C:39–5b. In denying their Motion to Suppress, the *Oberlton* court concluded that a motor vehicle stop based upon a police officer's conclusion that "tinted" windows violate New Jersey law is a valid stop.

■ I respectfully disagree with the trial court in *Oberlton*. As referenced by the trial judge in *Oberlton* when noting its disagreement with the *Harrison* court, since *Oberlton* is an opinion of a trial court, I am not required to follow it because I am not bound by a decision of a court of coordinate jurisdictions. See *State v. Hudes*, 128 *N.J.Super.* 589, 321 *A.*2d 275 (Co.Ct.1974) and *State v. Mundy*, 113 *N.J.Super.* 308, 273 *A.*2d 620 (Co.Ct.1970), *aff'd* 113 *N.J.Super.* 301, 273 *A.*2d 617 (App.Div.1971).

■ It is well settled that a law enforcement officer may stop a motorist in those situations in which there is at least an articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is subject to seizure for violation of the law. *Delaware v. Prouse, supra; State v. Murphy*, 238 *N.J.Super.* 546, 570 *A.*2d 451 (App.Div.1990) and *State v. Nugent*, 125 *N.J.Super.* 528, 312 *A.*2d 158 (App.Div.1973). A motorist may be stopped and detained whenever there is a reasonable and articulable suspicion that a motor vehicle violation has occurred. *Murphy, supra; Nugent, supra.*

■ Unlike the court in *Oberlton*, this court concludes that transparent or "tinted" material in and of itself does not justify a motor vehicle stop. *N.J.A.C.* 13:20–33.6, and *N.J.A.C.* 13:20–33.7, which supersedes this Code section as of November 15, 1999, do not per se make every motor vehicle with transparent or "tinted" material on its windshield or windows violative of the law.

A closer look at *N.J.A.C.* 13:20–33.6, which was current through November 15, 1999, and dealt with "Glazing", reveals there exists no per se violation for having "glazing" or "tinting" on a motor vehicle. In pertinent part, *N.J.A.C.* 13:20–33.6 reads as follows:

(a) All glazing used on motor vehicles after July 1, 1935, must be approved type which is legible and permanently marked with the manufacturer's name, trademark, DOT number or as to be visible when the glazing is installed in the vehicle. The AS number must also appear and the proper type glazing must be types of glazing are as follows:

1. AS–1: Mandatory in windshields but may be used for any other window in a motor vehicle;

2. AS–2: Anywhere except windshields;

3. AS–3: Rear side windows on buses;

4. AS–4, AS–5, AS–6, and AS–7: Rear windows of convertibles and windows which can be readily removed without the use of tools (not legal for windshields);

5. AS–8 and AS–9: Rear windows of buses;

6. AS–10: Bullet-resistant windshields;

7. AS–11: Bullet-resistant windows except windshields;

8. AS–12 and AS–13: Windows which can be readily removed without the use of tools (not legal for windshields).

. (c) Certification of a vehicle shall not occur if the vehicle has unduly broken, cracked, discolored or deteriorated glazing which causes unsafe visibility for the driver, or if the vehicle has any windows with sharp edges.

. (d) A vehicle shall not be certified which has tinted spray or plastic material added to previously approved glazing in the front windshield or windows, vents or deflectors to the immediate right or left of the driver because such condition changes the vision and light transmission properties of the glazing in areas where driver visibility shall not be obscured or obstructed .

. .(g) Any vehicle may have the rear window and/or side windows to the rear of the driver tinted or covered in some manner so as to partially obscure the driver's view. . , provided that the vehicle is equipped with an exterior mirror on each side of the vehicle. If glazing material remains in any of the window openings mentioned above, it must be possible to read the approval markings.

...(h) A vehicle shall not be certified which has mirror-type material on any window.

A fair reading of this Code section would indicate that glazing or "tinted" material is acceptable on windshields and windows on motor vehicles under certain circumstances and conditions.

The facts of the present case reveal that the defendant juvenile, R.M., was operating a 1991 Honda Four (4) Door Accord on Route 9 Northbound in Freehold Township, New Jersey, on May 4, 2000 at approximately 7:47 p.m. with J.M. as a passenger. While stopped at a red light, their vehicle was observed by a patrolman from the Freehold Township Police Department. This officer testified that he observed the vehicle operated by R.M. stopped in traffic and subsequently pulled him over for the specific purpose of giving him a motor vehicle summons for having "tinted" windows on the automobile.

At a hearing on a Motion to Suppress Evidence, the officer stated that he viewed no other motor vehicle violations prior to the stop, issued no other summonses for any other violation, and made no direct or indirect observation or inspection of the registration status of the vehicle. The officer testified that it was his policy to stop every car he viewed with "tinted" windows and to give the operators of those motor vehicles a summons citing the statute and code number recommended to him by his Municipal Court Judge.

Rather than issuing a motor vehicle summons under *N.J.S.A.* 39:3–74, as was done in *Harrison* and *Oberlton,* the officer from Freehold Township issued a summons under *N.J.S.A.* 39:3–43, Powers of the Commissioner, and cited directly to *N.J.A.C.* 13:20–33.6.

*N.J.S.A.* 39:3–43 reads as follows:

The Commissioner of Motor Vehicles has hereby given authority to pass upon the construction and equipment of any vehicle, motor vehicle or motor-drawn vehicle with a view to its safety for use on a street or a highway and it shall be lawful for the Commissioner to refuse registration to any vehicle that in his estimation is not a proper vehicle to be used upon a highway. The Commissioner is hereby authorized to promulgate regulations, not inconsistent with this chapter, concerning the construction and equipment of any vehicle, motor vehicle or motor-drawn vehicle. The Commissioner may require the approval of any equipment or device

and may set up the procedure which shall be followed when any equipment or device is submitted for approval. The Commissioner may revoke or suspend for cause and after hearing any certificate of approval that may be issued under the article. The Commissioner at his discretion is hereby authorized to disapprove any equipment or device.

The Administrative Code cited in the motor vehicle summons dated May 4, 2000, had been superceded by *N.J.A.C.* 13:20–33.7, as of November 15, 1999. Although this new code section was in effect at the time of the motor vehicle stop, subsection (a) of the new code is substantially the same as *N.J.A.C.* 13:20–33.6. Other modifications in the subsequent sections of *N.J.A.C.* 13:20–33.7, although changed in part are substantially similar to the section cited in the motor vehicle summons. For this reason, this court did not dismiss the complaint for the citing of an out-of-date Administrative Code section.

The officer testified that after the stop and as he approached the drivers side of the vehicle, he detected a strong odor of marijuana. At this time, he asked the driver R.M. to exit the vehicle and the passenger J.M. was asked to remove himself from the passenger seat by a back-up officer. A subsequent search of the interior of the automobile by a third officer revealed a glass vile containing a burnt marijuana cigarette under the passenger seat and approximately twenty-five (25) bags of marijuana in a pocket behind the driver seat. The Motion to Suppress in question was brought contesting the legality of the motor vehicle stop based solely on the observation of "tinted" windows.

As previously noted, *N.J.A.C.* 13:20–33.6 prohibits the use of "tinted" materials *"that do not meet certain standards"* (emphasis supplied). These standards are set forth in subsection (a) of that code. As the officer testified, his policy is to stop "every" car with "tinted" windows and to give those automobiles tickets citing the statute and code number recommended to him by his Municipal Court Judge. At no point during the officer's testimony did he indicate that he made any examination as to whether or not the "glazing" or "tinted" material that he observed on R.M.'s motor vehicle was in violation of the Administrative Code that was cited.

Thus, there was presented no testimony that the officer reasonably believed that the "tinting" did not comply with the standards set forth in the Administrative Code.

Absent testimony that the officer stopping the motor vehicle reasonably believed there was a violation of statute and not merely an observation of "tinted" material on the motor vehicle, this court finds that the stop in question was merely a pretext for the officer to stop all motor vehicles so outfitted. It is this court's opinion that prior to stopping an automobile for a violation of this type there must be an objective belief that the statute or code has been violated. Such was not the case here.

The *Oberlton* court noted that the Administrative Code specifically prohibits the use of "tinted" materials that, "do not meet certified standards," *not* (emphasis supplied) all "tinted" windows. It is clear to this court that the officer in question was not and is not aware of what *N.J.A.C* 13:20–33.7 proscribes or prohibits. As he testified, he merely stops every car "tinted" windows and issues them a summons. This court concludes that it is almost as if the police officer in question specifically "profiles" all vehicles with coloring on their windshield or windows to ticket same, with complete disregard for whether or not there is any articulable and reasonable suspicion that the coloring in question violates the statute or Administrative Code.

To allow all motor vehicles to be stopped for having "tinted" materials on the windshield absent any showing of a belief of articulable or reasonable suspicion that said material violates a statute or code would be akin to stopping all motor vehicles for routine license and registration checks, a practice prohibited in *Delaware v. Prouse, supra,* and *State v. Carpentieri,* 82 *N.J.* 546, 414 *A.*2d 966 (1980). This court holds that there must be something more than the mere observation of "tinted" material to justify the subjective decision of a police officer to randomly stop all such motor vehicles for ticketing.

■ A stop of an automobile for a traffic violation, even if only for a limited purpose, "constitutes a 'seizure of persons' within the meaning of the Fourth Amendment." *Whren v. United States,* 517 *U.S.* 806, 809–810, 116 *S.Ct.* 1769, 1772, 135 *L.Ed.2d* 89, 95 (1996).

■ This court thus finds that the motor vehicle stop in question was impermissible and violative of the juvenile's Constitutional right against unreasonable search and seizure as the motor vehicle stop was not based on any objective articulable and reasonable suspicion that a violation of the law occurred. In light of this finding, all evidenced seized as a result of the motor vehicle stop is suppressed.