**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0070-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JULIO C. GARCIA,

     Defendant-Appellant.

_____

Argued January 21, 2020 – Decided October 2, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-03-0403.

Alan Dexter Bowman argued the cause for appellant.

William P. Miller, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorneys; William P. Miller, of counsel and on the briefs; Catherine A. Foddai, Legal Assistant, on the briefs).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

MITTERHOFF, J.A.D.

Defendant Julio C. Garcia appeals from a February 18, 2016 order that denied his motion to suppress. After the motion judge entered the order, defendant pled guilty to second-degree possession of a handgun, N.J.S.A. 2C:39-5(b). On appeal, defendant argues that the motion judge erred because the warrantless search was unreasonable and, thus, its fruits should have been suppressed. Having reviewed the record, and in light of the applicable law, we reject defendant's argument and affirm.

We discern the following facts from the record before us. On July 17, 2014, Hackensack police officers patrolled the city in a marked police vehicle when they observed a silver Hyundai Elantra traveling westbound on Central Avenue. The driver of the vehicle, later determined to be the defendant, failed to signal when turning onto First Street. The officers followed and stopped the vehicle. This occurred in "a well[-]documented[,] high narcotic, high crime area[.]" Both officers exited the marked police vehicle and approached defendant's vehicle on the driver and passenger sides. One of the officers asked defendant for his license and registration. Defendant's girlfriend was also in the vehicle. Defendant admitted that he did not have a driver's license. During his

interaction with the officers, defendant kept his hand on his right front pocket. Defendant appeared very nervous, he was breathing heavily, his hands were shaking, and he was sweating profusely. While the officers engaged with defendant, his girlfriend repeatedly tried to speak over the defendant. The officer asked defendant to exit the vehicle and ordered him to keep his hand away from his pocket. Despite this command, defendant kept placing his hand over his right pocket. As defendant walked towards the rear of the vehicle, he said, "I don't have anything on me." The officer advised defendant he was conducting a "pat down," and felt a hard object near defendant's right front pocket. The officer retrieved an unloaded .22 caliber revolver and placed defendant under arrest.

On March 27, 2015, defendant was indicted for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count one), and second-degree certain persons not to be in possession of a weapon, N.J.S.A. 2C:39-7(b) (count two).

Defendant filed a motion to suppress, and an evidentiary hearing was conducted on February 11, 2016. The arresting officer and defendant's girlfriend were the only witnesses. The officer testified that defendant "seemed overly nervous, he was shaking. He was sweating profusely. The whole time his right

A-0070-18T4

hand was covering his right front short pocket." Defendant admitted "he didn't have a license, [that] he was driving without one." The officer testified defendant's right hand was "over his right front short's pocket the entire time." The officer asked defendant "if [he] could pat him down for weapons, which [defendant] said was fine." Over his right front pocket the officer felt "a hard object" that "could have been a gun[.]" The officer went into defendant's pocket and retrieved a handgun. Defendant's girlfriend also testified, stating that defendant "seemed nervous, obviously, because he didn't have a license." Defendant's girlfriend also stated that he was sweating. Defendant's girlfriend also testified that they "were both kind of yelling. So [she felt] like it was probably hard for [the officer] to hear us."

Oral argument on the motion was heard that same day. Defendant's counsel argued that the officer "wanted to get [defendant] out of the car, he wanted to search him." The State contended that there was no dispute as to the propriety of the motor vehicle stop. The State further argued that, based on the totality of the circumstances, there was a sufficient basis to "frisk" defendant.

The motion judge ultimately denied defendant's motion to suppress. In reaching the decision, the judge "listened closely to the witnesses testimony" and "observed their body language, character and demeanor to assess the

4

reasonableness of their testimony and any motives they may have to tell the truth or to prevaricate[.]" The judge determined that the officer "had excellent recall of the events that took place" and that his "testimony was more plausible and more credible than the testimony offered by" defendant's girlfriend. Notwithstanding, the judge found the testimony of defendant's girlfriend corroborated most of the officer's testimony.

The motion judge determined that "the defendant's failure to signal when turning was a sufficient justification" for the officers to stop the vehicle. The judge found that the officer had "an objectively reasonable and articulable justification to perform a search of the defendant for weapons that could have posed a risk of harm" to him. In reaching this conclusion, the judge noted the officer's testimony that defendant appeared to be very nervous and sweating profusely. This was corroborated by the testimony of defendant's girlfriend. The judge also considered the fact that the officer repeatedly testified that defendant kept his hand on his right front pocket the entire time. For these reasons, the judge denied defendant's motion to suppress. This appeal ensued.

On appeal, defendant presents the following arguments:

> I. THE WARRANTLESS SEARCH WAS UNREASONABLE AND ITS FRUITS MUST BE SUPPRESSED.

Our review of a determination of a motion to suppress evidence is limited, and we defer to "the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings." State v. Gonzales, 227 N.J. 77, 101 (2016) (citing State v. Elders, 192 N.J. 224, 243-44 (2007)). In other words, we defer to the trial court's factual findings on a motion to suppress, "unless they were 'clearly mistaken' or 'so wide of the mark' that the interests of justice require[] appellate intervention." Elders, 192 N.J. at 245 (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). Such findings will not be disturbed, even if an opportunity for independent review might lead to a different conclusion. State v. Johnson, 42 N.J. 146, 162 (1964). Because the motion judge observed the character and demeanor of the witnesses at the suppression hearing, he was in a better position to determine credibility. State v. Locurto, 157 N.J. 463, 474 (1999). However, we exercise plenary review of the court's application of the law to the facts on a motion to suppress. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999).

Defendant does not argue that the officers lacked a reasonable or articulable suspicion that a motor vehicle violation occurred; rather, defendant

A-0070-18T4

argues that his alleged conduct only "constituted a relatively minor traffic infraction." This argument is without merit.

It is well-established that "law enforcement officials may stop motor vehicles where they have a reasonable or articulable suspicion that a motor vehicle violation has occurred." State v. Murphy, 238 N.J. Super. 546, 553 (App. Div. 1990). Reasonable suspicion may arise even where a minor traffic offense is committed. Locurto, 157 N.J. at 466-67 (finding the stop was justified based on the officer's observations of the defendant driving at a high rate of speed in excess of the posted speed limit); see also State v. Nugent, 125 N.J. Super. 528, 534 (App. Div. 1973) ("state trooper had the right to stop the car in which defendants were riding when he observed that there was a hanging license plate and broken light lens."). Here, the officers observed defendant failing to signal when turning at an intersection in violation of N.J.S.A. 39:4-126. That eyewitness observation was sufficient to legitimize a traffic stop. See State v. Bacome, 228 N.J. 94, 103 (2017).

Defendant's principal argument on appeal is that the officers created pretextual probable cause when they "purposely induced nervous and anxious responses from [defendant] by virtue of intimidating tactics." We reject this argument.

A-0070-18T4

It is well-settled that "courts will not inquire into the motivation of a police officer whose stop of an automobile is based upon a traffic violation committed in his presence." State v. Kennedy, 247 N.J. Super. 21, 28 (App. Div. 1991). "The fact that the justification for the stop was pretextual [is] . . . irrelevant." Id. at 29.

Following a lawful stop, "the resultant request of a motorist to exit the vehicle is constitutionally permissible." State v. Bernokeits, 423 N.J. Super. 365, 370-71 (App. Div. 2011) (citing Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977)). Moreover, after stopping a suspect, a protective search or frisk is permissible when an officer reasonably believes the individual is "armed and dangerous." Terry v. Ohio, 392 U.S. 1, 27 (1968). "The search is judged by whether a reasonably prudent person would be warranted in the belief that his or her safety or that of others was in danger[,]" State v. Lund, 119 N.J. 35, 45 (1990), and "must 'be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" State v. Privott, 203 N.J. 16, 25 (2010) (quoting Terry, 392 U.S. at 29). "In short, the Constitution commands police officers to act reasonably, not to needlessly place their lives at risk." State v. Terry, 232 N.J. 218, 247 (2018).

A-0070-18T4

We agree with the motion judge that there was an objectively reasonable and articulable justification, under the totality of the circumstances, to perform a "frisk" of defendant for weapons that could have posed a risk of harm. The officer testified that the stop occurred in "a well[-]documented[,] high narcotic, high crime area," and that defendant appeared overly nervous, was breathing heavily, was sweating profusely, and that defendant's hands were shaking. Defendant admitted that he did not have a driver's license. Furthermore, the officer testified that defendant kept his hand on his right front pocket during the entire interaction with the officers. We find no basis in the record to displace the factual and credibility findings of the motion judge. Elders, 192 N.J. at 245.

Therefore, we reject defendant's argument that the "frisk" was unreasonable. See State v. Valentine, 134 N.J. 536, 553-54 (1994) (holding a frisk was justified where "defendant initially had his hands in his pockets . . . defendant's nervousness, defendant's failure to make eye contact . . . the high-crime nature of the area, and the time of the night all contributed to [the officer's] reasonable belief that defendant was armed and dangerous.")

To the extent that we have not addressed defendant's remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

A-0070-18T4

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0070-18T4